SOUTHWESTERN BELL TELE-
PHONE COMPANY, L.P., d/b/a
SBC Texas, Petitioner,

v.

William C. MITCHELL, Beneficiary
of Louise Mitchell, Decedent,
Respondent.

No. 05–0171.

Supreme Court of Texas.

Argued March 23, 2006.

Decided Dec. 19, 2008.

Rehearing Denied Feb. 27, 2009.

Mike A. Hatchell, Molly H. Hatchell, Susan A. Kidwell, LockeLord Bissell & Liddell, LLP, Austin, TX, Lawrence D. Smith, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., San Antonio, TX, for Petitioner.

Alan D. Tysinger, Miller & Tysinger, P.C., Kevin B. Miller, Law office of Miller & Bicklein, San Antonio, TX, for Respondent.

P.M. Schenkkan, Peter D. Kennedy, Graves, Dougherty, Hearon & Moody, Mary Barrow Nichols, Texas Mutual Insurance Company, Jack W. Latson, Robert D. Stokes, Flahive Ogden & Latson, Austin, TX, for Amici.

Justice HECHT delivered the opinion of the Court, in which Justice WAINWRIGHT, Justice BRISTER, Justice JOHNSON, and Justice WILLETT joined.

In *Continental Casualty Co. v. Downs,* we construed section 409.021(a) of the Workers' Compensation Act[1] to preclude a carrier from contesting the compensability of an employee's injury unless, within seven days of receiving notice of injury, it either began to pay benefits or gave written notice of its refusal to do so.[2] For more than a decade, the Texas Workers' Compensation Commission, the entity then charged with carrying out the Act,[3] had consistently taken the position that a carrier had sixty days to contest compensability.[4] Less than nine months after *Downs* was final, the Legislature amended section 409.021 to make clearer that a carrier who "fails to comply with Subsection (a) does not waive the ... right to contest the compensability of the injury".[5]

Because the rule announced in *Downs* was in effect for only about a year, petitioner contends we should overrule that case as having been wrongly decided. We agree. We reverse the judgment of the court of appeals[6] and remand the case to the trial court for further proceedings.

## I

On August 14, 2000, Louise Mitchell, a clerk-typist for petitioner Southwestern Bell Telephone Company, was diagnosed with Legionnaire's disease. Claiming to

1. Act of December 12, 1989, 71st Leg., 2d C.S., ch. 1, § 5.21, 1989 Tex. Gen. Laws 1, 51 (effective Jan. 1, 1991) (formerly Tex.Rev.Civ. Stat. Ann. art. 8308–5.21), codified by Act of May 12, 1993, 73d Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1195–1196, as Tex. Labor Code §§ 409.021–.022.

2. 81 S.W.3d 803, 804, 807 (Tex.2002).

3. The Commission was created in 1989 to replace the Industrial Accident Board, and was abolished effective September 1, 2005, with its functions transferred to a new division of the Texas Department of Insurance. Act of December 12, 1989, 71st Leg., 2d C.S., ch. 1, §§ 2.01–.09, 17.01, 1989 Tex. Gen. Laws at 7, 115 (see former Tex.Rev.Civ. Stat. Ann. art. 8308–2.01 *et seq.*, codified in 1993 as Chapter 402 of the Texas Labor Code); Act of May 29, 2005, 79th Leg., R.S., ch. 265, §§ 1.003, 8.001, 2005 Tex. Gen. Laws 469, 470, 607–608.

4. *Downs,* 81 S.W.3d at 809 (Jefferson, J., dissenting) (citing cases).

5. Act of May 28, 2003, 78th Leg., R.S., ch. 1100, § 1, 2003 Tex. Gen. Laws 3161, 3162 [H.B. 2199].

6. 276 S.W.3d 452 (Tex.App.–San Antonio 2005) (mem. op.).

have contracted the disease at work, Mitchell sent Bell a notice of injury, which Bell received on August 23. Mitchell died four days later, and her husband, respondent William Mitchell, claimed workers' compensation death benefits. On October 5, 43 days after receiving notice of injury, Bell, a self-insured nonsubscriber, contested compensability in a filing with the Commission.

At the time, section 409.021(a) of the Texas Labor Code stated:

An insurance carrier shall initiate compensation ... promptly. Not later than the seventh day after the date on which an insurance carrier receives written notice of an injury, the insurance carrier shall:

(1) begin the payment of benefits as required by this subtitle; or

(2) notify the commission and the employee in writing of its refusal to pay and advise the employee of:

(A) the right to request a benefit review conference; and

(B) the means to obtain additional information from the commission.[7]

Earlier in the year, on January 26, the court of appeals had issued its opinion in *Downs* holding that a carrier who failed to meet this seven-day deadline could not contest compensability. The Commission had always taken the position that failing to meet the deadline resulted only in a possible administrative penalty,[8] not in a loss of the right to contest compensability.[9] The Commission believed a carrier had sixty days to contest compensability, based on section 409.021(c), which stated:

(c) If an insurance carrier does not contest the compensability of an injury on or before the 60th day after the date on which the insurance carrier is notified of the injury, the insurance carrier waives its right to contest compensability. The initiation of payments by an insurance carrier does not affect the right of the insurance carrier to continue to investigate or deny the compensability of an injury during the 60-day period.[10]

After the court of appeals' *Downs* decision, the Commission adhered to its position, adopting rules in March that reflected its construction of the statute.[11] On August 16, the court granted rehearing and issued

7. Act of May 12, 1993, 73d Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1195, codifying Act of December 12, 1989, 71st Leg., 2d C.S., ch. 1, § 5.21(a) (in part), (b), 1989 Tex. Gen. Laws 1, 51 (effective Jan. 1, 1991) (formerly Tex Rev.Civ. Stat. Ann. art. 8308–5.21).

8. Tex. Labor Code § 409.021(e) ("An insurance carrier commits a violation if the insurance carrier does not initiate payments or file a notice of refusal as required by this section. A violation under this subsection is a Class B administrative violation. Each day of noncompliance constitutes a separate violation."), Act of May·12, 1993, 73d Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1196, codifying, as rewritten, Act of December 12, 1989, 71st Leg., 2d C.S., ch. 1, § 5.21(a) (in part), (b), 1989 Tex. Gen. Laws 1, 51 (effective Jan.

1, 1991) (formerly Tex.Rev.Civ. Stat. Ann. art. 8308–5.21(a)–(b)).

9. *See* Tex. Workers' Comp. Comm'n, Appeal No. 960949, 1996 WL 367060, at *6 (June 28, 1996); Tex. Workers' Comp. Comm'n, Appeal No. 950944, 1995 WL 481670, at * 5 (July 24, 1995); Tex. Workers' Comp. Comm'n, Appeal No. 92532, 1992 WL 373451, at *4 (Nov. 13, 1992); Tex. Workers' Comp. Comm'n, Appeal No. 92122, 1992 WL 358230, at *6 (May 4, 1992).

10. Tex. Labor Code § 409.021(c).

11. 25 Tex. Reg. 2101 (Mar. 10, 2000) (adopting new Rule 124.3, 28 Tex. Admin. Code § 124.3 (2000)); *id.* at 2106–2114 (Mar. 10, 2000) (adopting new Rule 132.17, 28 Tex. Admin. Code § 132.17 (2000)).

a substitute opinion reaching the same result,[12] and twelve days later the Commission's executive director issued the following advisory:

> After consultation with the Office of the Attorney General ..., the Commission understands that the August 16th decision in the *Downs* case should not be considered as precedent at least until it becomes final upon completion of the judicial process. In addition, the related Commission's rules, such as those found at 28 TEX. ADMIN. CODE §§ 124.2, 124.3, and 132.17, remain in effect.[13]

For the Mitchell claim, *Downs*'s new seven-day deadline fell two weeks after the court of appeals' final opinion and two days after the Commission's advisory against compliance. Bell did not meet that deadline but did file its contest of compensability within sixty days, as the Commission required. For more than two years, the administrative proceeding languished while *Downs* was appealed to this Court. We affirmed the court of appeals on June 6, 2002, but pending rehearing, the Commission remained adamant in its position. On June 17, it issued an advisory stating that "the 7 day 'pay or dispute' provision in the *Downs* case is not final pending the motion for rehearing."[14] On July 31, a Commission appeals panel followed the Commission's construction of the statute, holding that a carrier did not waive the right to contest compensability as long as it did so within sixty days of receiving notice of injury.[15] We overruled the motion for re-

hearing in *Downs* on August 30 and issued the mandate September 9. On September 12, the Commission issued an advisory acknowledging that *Downs* was final and stating that "[a]ll previous Advisories issued by the Commission regarding this issue are superseded by this Advisory and the Supreme Court decision."[16]

The Mitchell proceeding then resumed. A contested case hearing was held in March 2003, the focus of which was, according to the hearing officer, "where the bacteria [legionella pneumophilia] was contracted, that is, at work, or somewhere else." Based on medical evidence that "the bacteria is everywhere in the environment and because no other co-workers, including those at high risk, contracted the disease", the hearing officer concluded that Mitchell's husband had failed to prove that Mitchell contracted her illness in the course and scope of employment, finding instead that "[t]he legionnaire's disease that caused her death was an ordinary disease of life." However, the hearing officer also rejected Bell's argument that *Downs* should not be applied retroactively and concluded that by failing to pay benefits or give notice of its refusal to do so within seven days of notice of Mitchell's injury, Bell was precluded from contesting compensability. Consequently, the hearing officer awarded death benefits to Mitchell's husband. Bell filed an administrative appeal.

12. *Downs v. Continental Cas. Co.*, 32 S.W.3d 260 (Tex.App.–San Antonio 2000), *aff'd*, 81 S.W.3d 803 (Tex.2002).

13. Tex. Workers' Comp. Advisory 2000–07 (Aug. 28, 2000), http://www.tdi.state.tx.us/wc/news/advisories/ad2000–07.html.

14. Tex. Workers' Comp. Advisory 2002–08 (June 17, 2002), http://www.tdi.state.tx.us/wc/news/advisories/ad2002–08.html.

15. Tex. Workers' Comp. Comm'n, Appeal No. 021635, 2002 WL 1981340, at *2–3 (July 31, 2002), http://www.tdi.state.tx.us/appeals/2002cases/021635r.pdf.

16. Tex. Workers' Comp. Advisory 2002–15 (Sept. 12, 2002), http://www.tdi.state.tx.us/wc/news/advisories/ad2002–15.html.

On May 28, 2003, about nine months after *Downs* was final, the Legislature amended section 409.021 to make clearer that the rule the Commission had long applied was the rule that the Legislature believed should be followed. The amendment added the following paragraph (a–1):

An insurance carrier that fails to comply with Subsection (a) does not waive the carrier's right to contest the compensability of the injury as provided by Subsection (c) but commits an administrative violation subject to Subsection (e).[17]

On May 29, the day after the amendments to section 409.021 passed, the Commission appeals panel affirmed the hearing officer's decision, holding that *Downs* should apply retroactively to injuries occurring before the Court's decision was final. Bell sought review in the district court, which, though of the view that this Court "may ... very well [have] been wrong in *Downs*", granted summary judgment for Mitchell's husband. The court of appeals affirmed.[18]

We granted Bell's petition for review.[19]

## II

Bell, supported by several amici curiae,[20] argues that we should overrule *Downs*. We agree.

"Generally, the doctrine of stare decisis dictates that once the Supreme Court announces a proposition of law, the decision is considered binding precedent",[21] but we have long recognized that the doctrine is not absolute. "[W]e adhere to our precedents for reasons of efficiency, fairness, and legitimacy",[22] and "when adherence to a judicially-created rule of law no longer furthers these interests, and 'the general interest will suffer less by such departure, than from a strict adherence,' we should not hesitate to depart from a prior holding." [23] "[U]pon no sound principle do we feel at liberty to perpetuate an error, into which either our predecessors or ourselves may have unadvisedly fallen, merely upon the ground of such erroneous decision having been previously rendered." [24]

We have observed that "in the area of statutory construction, the doctrine of *stare decisis* has its greatest force" [25] because the Legislature can rectify a court's mistake, and if the Legislature does not do so, there is little reason for the court to reconsider whether its decision was correct. But when the Legislature does not acquiesce in the court's construction, when instead it immediately makes

17. Act of May 28, 2003, 78th Leg., R.S., ch. 1100, § 1, 2003 Tex. Gen. Laws 3161, 3162.

18. 276 S.W.3d 452, 455 (Tex.App.–San Antonio 2005) (mem. op.).

19. 49 Tex. S.Ct. J. 360 (Feb. 24, 2006).

20. Texas Municipal League—Intergovernment Risk Pool, Texas Association of Business, Texas Association of School Boards, Insurance Council of Texas, Texas Mutual Insurance Co., and Edwards Risk Management, Inc.

21. *Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex.2002).

22. *Weiner v. Wasson*, 900 S.W.2d 316, 320 (Tex.1995).

23. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 215 (Tex.2001) (Baker, J., concurring) (quoting *Benavides v. Garcia*, 290 S.W. 739, 740 (Tex. Comm'n App.1927, judgm't adopted)).

24. *Willis v. Owen*, 43 Tex. 41, 48–49 (1875).

25. *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 186 (Tex.1968) (citing *Moss v. Gibbs*, 370 S.W.2d 452, 458 (Tex.1963), and *United States v. South Buffalo Ry.*, 333 U.S. 771, 774–775, 68 S.Ct. 868, 92 L.Ed. 1077 (1948)).

clear that the proper construction is one long adopted by the agency charged with enforcing the statute, judicial adherence to the decision in the name of *stare decisis* may actually disserve the interests of "efficiency, fairness, and legitimacy" that support the doctrine. It is hardly fair or *efficient to give effect to a judicial con-struction of a statute for a brief period of time* when the Legislature has reinstated for future cases the same rule that had been followed before the court's decision. The doctrine of *stare decisis* does not justify inequity and confusion in such a narrow gap of time.

■ That is precisely the situation here. In *Downs*, we construed section 409.021(a) of the Workers' Compensation Act to provide that a carrier that did not pay or dispute a claim by paragraph (a)'s seven-day deadline could not contest compensability.[26] We issued our opinion on June 6, 2002, denied rehearing on August 30, and issued our mandate on September 9. The Legislature convened in regular session on January 14, 2003. House Bill 2199 was filed on March 11. After minor changes in committee, the bill added the following paragraph (a–1) to section 409.021, stating:

> An insurance carrier that fails to comply with Subsection (a) does not waive the carrier's right to contest the compensability of the injury as provided by Subsection (c) but commits an administrative violation subject to Subsection (e).[27]

The effect of the amendment was to restore the rule the Texas Workers' Compensation Commission had applied for a decade.

Thus, *Downs* is simply an anomaly in the law. Prior cases unaffected by *Downs*, and cases controlled by House Bill 2199, are all treated alike. The rule for them is the same. Were we to adhere to *Downs*, a different rule would apply only in those cases caught in the *Downs* gap. *Stare decisis* does not warrant an obstinate insistence on precedent that appears to be plainly incorrect.

We believe, as the dissent does, that finality is an important consideration in statutory construction, and that an appellate court's decisions should not change merely because the judges have changed. But while we think *Downs* was wrongly decided, as does the author of the dissent, even if our view of *Downs* were different, we could not insist that it disrupt the orderly application of the law in a few cases before the Legislature's amendment to the statute. No interest in *stare decisis* supports the application of different rules in these circumstances. Contrary to the dissent, we opt for stability in the law—a rule that has been followed for years and is, by legislative action, to continue to be followed in the future. The error in *Downs* can easily be remedied without violating the principles of *stare decisis*. The case is overruled.

Accordingly, we reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

NATHAN L. HECHT, Justice.

Chief Justice JEFFERSON filed a dissenting opinion, in which Justice O'NEILL and Justice MEDINA joined.

Justice GREEN took no part in the decision of the case.

Chief Justice JEFFERSON, joined by Justice O'NEILL and Justice MEDINA, dissenting.

As I noted in dissent six years ago, I believe *Downs* was wrongly decided. *Con-*

---

**26.** *Continental Cas. Co. v. Downs,* 81 S.W.3d 803, 804, 807 (Tex.2002).

**27.** Tex. H.B. 2199, 78th Leg., R.S. (2003) (committee substitute); Tex. Lab.Code § 409.021(a–1).

tinental Casualty Co. v. Downs, 81 S.W.3d 803, 808 (Tex.2002) (Jefferson, J., dissenting). Echoes of my dissent ring in the Court's decision today, but the vindication associated with the Court's ruling comes at too high a price. A dissent does many things—it pinpoints perceived faults in the Court's opinion, it speaks to a future Court, it may suggest a legislative fix—but it is not the law. The *Downs* Court declared the statute's meaning even if a subsequent Legislature determined that it misconstrued legislative intent. A Court's decision on statutory construction is not infallible, but it must be final so that Texas citizens know how to conduct their affairs and can engage the political process to modify policy that has purportedly gone awry. Such is the case here. To continue to press a dissent after the Legislature has had occasion to change the law essentially refutes the constitutional principle, laid down in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178, 2 L.Ed. 60 (1803), that the *Court* ultimately declares the law's meaning.

*Downs* stated the law, and we should not so quickly cast it aside. *Dickerson v. United States*, 530 U.S. 428, 443, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)("Whether or not we would agree with *Miranda*'s reasoning and its resulting rule, were we addressing the issue in the first instance, the principles of *stare decisis* weigh heavily against overruling it now."). The Legislature altered the law as announced in *Downs*, but *Downs* still governs cases filed before the legislative amendment. Because the Court overrules *Downs*, and because I would not apply Downs prospectively only, I respectfully dissent.

# I

## Overruling *Downs*

*Stare decisis* has its greatest force in cases involving statutory construction. *Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex.2000). "More practically, it results in predictability in the law, which allows people to rationally order their conduct and affairs." *Id.* Thus, " 'in most matters it is more important that the applicable rule of law be settled than that it be settled right.' " *John R. Sand & Gravel Co. v. United States*, —— U.S. ——, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008) (quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting)). A willingness to abandon precedent merely because we no longer believe the decision is correct "substitute[s] disruption, confusion, and uncertainty for necessary legal stability." *Id.; see also Weiner v. Wasson*, 900 S.W.2d 316, 320 (Tex.1995)(noting that "if we did not follow our own decisions, no issue could ever be resolved" and cautioning that "[t]he potential volume of speculative relitigation under such circumstances alone ought to persuade us that *stare decisis* is a sound policy").

*Downs*, a 5–4 decision, was thoroughly briefed (including submissions from the Texas Workers' Compensation Commission and a chorus of other amici, at least one of which also urges us today to overrule the decision), and it was carefully considered. Bell makes a number of arguments for overruling *Downs*, most of which were raised and, to my dismay, rejected in *Downs*. The only new reason advanced is that the Legislature amended section 409.021 nine months after our decision. That is enough, says Bell, to conclude that *Downs* was "manifestly erroneous." While it is true that the Seventy–Eighth Legislature amended section 409.021 in 2003, its actions provide no insight into the Seventy–First Legislature's intent when enacting the law some fourteen years earlier. *Massachusetts v. EPA*, 549 U.S. 497, 127

S.Ct. 1438, 167 L.Ed.2d 248 (2007) (noting that what subsequent Congresses have done "tells us nothing about what Congress meant" when it previously amended the statute at issue); *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960) (holding that "the views of a subsequent Congress form a hazardous basis for infer ring the intent of an earlier one"); *Rowan Oil Co. v. Tex. Employment Comm'n,* 152 Tex. 607, 263 S.W.2d 140, 144 (1953) (observing that "neither does one session of the Legislature have the power to construe the Acts or declare the intent of a past session"); *see also* Texas Workers' Compensation Act, 71st Leg., 2d C.S., ch. 1, § 5.21(a), (b), 1989 Tex. Gen. Laws 1, 51. Moreover, even in the face of swifter and clearer subsequent legislative action, we have nonetheless abided by our prior decisions. *See Storage & Processors, Inc. v. Reyes,* 134 S.W.3d 190, 192 (Tex.2004) (noting that "[a]lthough the Legislature ten weeks later amended the Labor Code to prohibit pre-injury waivers, *Lawrence* remains the law for those claims, like Reyes', brought by workers who both signed non-subscriber agreements and suffered injury before [the amendment]").

Legislatures write statutes; courts construe them. *Cf.* THE FEDERALIST NO. 78, at 466 (Alexander Hamilton) (Clinton Rossiter ed., 1961)("The interpretation of the laws is the proper and peculiar province of the courts."). We did so in *Downs,* and subsequent legislative action should not affect our construction. This is not to suggest we are infallible. When there are "compelling reasons" for doing so, *Weiner,* 900 S.W.2d at 320, we can, and should, reexamine our decisions, *Gutierrez v. Collins,* 583 S.W.2d 312, 317 (Tex.1979) ("*Stare decisis* prevents change for the sake of change; it does not prevent any change at all."). But when the principal arguments for overruling a case are the same contentions we rejected the first time around, we should not be so quick to reconsider. In overruling *Downs,* the Court does a disservice to those who abided by the decision (as well as Continental Casualty, the *Downs* petitioner) and trades stability for disruption, confusion, and uncertainty. *John R. Sand & Gravel Co.,* 128 S.Ct. 750. Today's decision encourages the very sort of "speculative relitigation" we warned against in *Weiner.* We should not abandon *stare decisis* principles here.

## II

### Non-retroactive Application

Nor would I hold, as Bell urges, that *Downs* should be applied prospectively only. As a rule, our decisions apply retroactively. *Elbaor v. Smith,* 845 S.W.2d 240, 250 (Tex.1992). Nevertheless, we have long recognized narrow exceptions to this rule-largely in common-law cases regarding torts and contracts. *See, e.g., Felderhoff v. Felderhoff,* 473 S.W.2d 928, 933 (Tex.1971) (limiting prospective application of new tort-liability rule); *Pollard v. Steffens,* 161 Tex. 594, 343 S.W.2d 234, 238 (1961) (expressing contrary presumption of non-retroactivity in contracts). In 1992, we adopted the Supreme Court's test articulated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), to determine when such exceptions should apply. *See Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Ind. Sch. Dist.,* 826 S.W.2d 489, 518–21 (Tex.1992).

Since our adoption of the *Chevron Oil* test, however, the Supreme Court explicitly overruled it as it applies to constitutional decisions and suggested that prospective application was not only wrong as to constitutional decisions, but contrary to the role of the judiciary. The Court stated:

When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.... [W]e can scarcely permit the substantive law [to] shift and spring according to the particular equities of [individual parties'] claims of actual reliance on an old rule and of harm from a retroactive application of the new rule.

*Harper v. Va. Dep't of Taxation,* 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (internal quotation marks omitted). Specifically, the Court recognized that " 'the nature of judicial review' ... strips [courts] of the quintessentially 'legislat[ive]' prerogative to make rules of law retroactive or prospective as we see fit." *Id.* at 95, 113 S.Ct. 2510 (quoting *Griffith v. Kentucky,* 479 U.S. 314, 322, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). As Justice Scalia wrote in a concurring opinion: "Prospective decisionmaking is the handmaid of judicial activism, and the born enemy of *stare decisis* .... The true traditional view is that prospective decisionmaking is quite incompatible with the judicial power, and that courts have no authority to engage in the practice." *Id.* at 105–106, 113 S.Ct. 2510 (Scalia, J., concurring) (emphasis omitted); *see also Hulin v. Fibreboard Corp.,* 178 F.3d 316, 333 (5th Cir.1999) (noting that the Supreme Court has "substantially reject[ed] ... departures [from the retroactivity doctrine] and return[ed] to the general rule of adjudicative retroactivity, leaving only an indistinct possibility of the application of pure prospectivity in an extremely unusual and unforeseeable case.").

Even if *Chevron*'s rule is still viable, applying it here would ignore the Legislature's role in setting a statute's effective date. Although a legislature cannot interpret the law, *see Rowan Oil,* 263 S.W.2d at 144 ("one session of the legislature [does not] have the power to ... declare the intent of a past session"), it can establish the effective date of a law it enacts—and, subject to constitutional restraints not raised here, can make that law retroactively effective if it so chooses. *See Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 313, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) ("[The Legislature] may even, within broad constitutional bounds, make such a change retroactive and thereby undo what it perceives to be the undesirable past consequences of what it perceives to be a misinterpretation of its work product. No such change, however, has the force of law unless it is implemented through legislation."). In this case, the Legislature was clear:

> This Act takes effect September 1, 2003, and applies only to a claim for workers' compensation benefits based on a compensable injury that occurs on or after that date. *A claim based on a compensable injury that occurs before the effective date of this Act is governed by the law in effect on the date the compensable injury occurred, and the former law is continued in effect for that purpose.*

Act of May 28, 2003, 78th Leg., R. S., ch. 1100, § 2, 2003 Tex. Gen. Laws 3161, 3162 (emphasis added). Thus, the Legislature chose not to disrupt the law in effect prior to September 1, 2003—the law as interpreted by this Court in *Downs,* 81 S.W.3d at 804. The Legislature having made that choice, the Court should not disturb it. *See Lasater v. Lopez,* 110 Tex. 179, 217 S.W. 373, 376–77 (1919) (Courts "violate their true powers and endanger their own authority whenever they undertake the legislative role[.]").

"It is not the duty of the court to write the laws of our state, but the proper function of the courts is to enforce the laws as made by the Legislature." *Cent. Ed. Agency v. Ind. Sch. Dist.,* 152 Tex. 56, 254 S.W.2d 357, 361 (1953). In *Downs,* this Court did just that, thereby announcing what section 409.021 of the Workers' Compensation Act had *always* meant. *See Rivers,* 511 U.S. at 312–13, 114 S.Ct. 1510 ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."). I would reject Bell's argument that *Downs* not be given retroactive effect.

## III

### Conclusion

The Court holds today that, "without violating the principles of *stare decisis,*" it may overturn very recent precedent construing a statute. Ironically, those principles counsel just the opposite. When we observe the time-honored tradition of adherence to precedent, particularly in statutory cases, the democratic process generally works as intended. It worked here. The Court declared the law in *Downs.* Though I believed then (and do now) that the Court's statutory analysis was flawed, the *Downs* holding nevertheless bound all litigants. It should also bind the Court. It was entirely appropriate, of course, for a subsequent Legislature to revise the statute. But the fact that the Legislature changed the law does not alter its former validity. Otherwise, the force of any prior decision in which we have determined statutory meaning is subject to change, threatening the law's stability. I would affirm the court of appeals' judgment.