IN THE SUPREME COURT OF TEXAS








IN THE SUPREME 
COURT OF TEXAS
════════════
No. 07-0572
════════════
Gail Ashley, 
Petitioner,
v.
Doris D. Hawkins, 
Respondent
════════════════════════════════════════════════════
On 
Petition for Review from the
Court of Appeals for the Ninth District of 
Texas
════════════════════════════════════════════════════
 
Argued December 
11, 2008
 
 
            
Justice Green delivered the 
opinion of the Court.
 
 
            
In this case, we consider whether section 16.063 of the Texas Civil 
Practice and Remedies Code tolls the limitations period when a defendant leaves 
Texas following a motor vehicle collision, but is otherwise amenable to 
out-of-state service. We hold, consistent with our recent decision in Kerlin v. Sauceda, 
263 S.W.3d 920 (Tex. 2008), that section 16.063 does not apply in these 
circumstances, and we also overrule our decision in Vaughn v. Deitz, 430 S.W.2d 487 (Tex. 1968). We, therefore, 
reverse the court of appeals’ judgment and reinstate the trial court’s grant of 
summary judgment.
I
            
On May 31, 2003, Gail Ashley and Doris Hawkins were involved in a motor 
vehicle collision in Montgomery County, Texas. After the wreck, sometime in 
2004, Ashley moved to California, leaving behind no forwarding address. On April 
1, 2005, approximately sixty days prior to the expiration of the two-year 
limitations period, Hawkins sued Ashley, alleging personal injuries and damages 
related to the wreck. Although Hawkins made attempts to serve Ashley, she was 
not actually served until May 10, 2006, by a Sacramento County sheriff, almost 
one year after the limitations period expired. Ashley sought summary judgment on 
a statute-of-limitations affirmative defense, arguing that Hawkins failed to 
exercise diligence in serving her. See Tex. Civ. Prac. & Rem. 
Code § 16.003(a) (setting a two-year 
limitations period for personal injury actions). In 
response, Hawkins argued that she exercised diligence in attempting to serve 
Ashley, and that, regardless, Ashley’s absence from the state tolled the 
limitations period under section 16.063 of the Texas Civil Practice and Remedies 
Code. The trial court granted Ashley’s motion, but the court of appeals 
reversed, holding that section 16.063 tolled the limitations period while Ashley 
was outside Texas. ___ S.W.3d ___. We reverse.
II
            
Ashley argues that the court of appeals erred in applying section 16.063 
because (1) the statute is unconstitutional under the Commerce Clause, as it 
burdens Ashley’s right to interstate travel; and (2) alternatively, even if 
constitutional, the statute should apply only in very narrow circumstances, as 
it is inconsistent with Texas’s out-of-state service provisions. Section 16.063 
provides:
 
Temporary 
Absence From State. The absence from this state of a 
person against whom a cause of action may be maintained suspends the running of 
the applicable statute of limitations for the period of the person’s 
absence.
 
Tex. Civ. Prac. & Rem. 
Code § 16.063. We 
recently held in Kerlin v. Sauceda, that: “[I]f a nonresident is amenable to 
service of process under the longarm statute and has 
contacts with the state sufficient to afford personal jurisdiction . . . then we 
can discern no reason why a nonresident’s ‘presence’ in this state would not be 
established for purposes of the tolling statute.” 263 S.W.3d 
at 927. Under the general longarm statute, a 
non-resident party is amenable to service through the Secretary of State, if he 
or she “engages in business in this state” and the proceeding at issue “arises 
out of the business done in this state and to which the nonresident is a 
party.” Tex. Civ. Prac. & Rem. Code § 
17.044(b). A nonresident defendant engages in business in 
this state, “if, among other acts . . . the nonresident commits a tort in 
whole or in part in this state.” Kerlin, 
263 S.W.3d at 927 (citing Tex. Civ. 
Prac. & Rem. Code § 17.042) (emphasis added). Thus, according to 
Kerlin, if a party engages in business in this 
state, then the party’s presence is established, and the tolling statute does 
not apply. Id. In her petition, Hawkins alleged that Ashley committed a 
tort in Montgomery County, Texas. Therefore, Ashley was present in Texas and 
amenable to service under the longarm statute.[1]
            
Unlike in Kerlin, however, we are now 
squarely presented with the issue of whether we should overrule our decision in 
Vaughn v. Deitz, 430 S.W.2d 487 (Tex. 1968). In 
Deitz, we held that the tolling statute, which 
preceded section 16.063 of the Civil Practice and Remedies Code, applied to an 
out-of-state defendant, despite the existence of former article 2039a (now 
codified as Tex. Civ. Prac. & Rem. Code § 17.062),[2] which provided for out-of-state service 
through the Chairman of the State Highway Commission. 430 S.W.2d at 49. In Kerlin, 
we recognized that Deitz did not address 
the effect of the general longarm statute, only the 
impact of amenability to service through the Chairman of the State Highway 
Commission (now the Chairman of the Texas Transportation Commission). 263 S.W.3d 
at 927; see also Tex. Civ. Prac. & Rem. 
Code § 17.062.[3] The general longarm statute not only provided for substituted service, 
but also established a nonresident’s presence in the state for purposes of 
personal jurisdiction. Kerlin, 263 S.W.3d at 927. Former article 2039a, the statute 
addressed in Deitz, and current section 17.062, 
provide only for substitute service, but do not define a defendant’s “presence.” 
Id.
            
Kerlin did not involve an automobile 
accident, so substituted service through the Texas Transportation Commission was 
not possible. Here, although Hawkins did not choose to pursue these options, 
Ashley was amenable to service under both section 17.062 (service on the 
Chairman of the Transportation Commission) and section 17.044 (service on the 
Secretary of State) of the Civil Practice and Remedies Code. Thus, we are 
presented with a conflict: Deitz says a 
defendant is not “present” in Texas for purposes of the tolling statute, even if 
amenable to service through the Chairman of the Highway (Transportation) 
Commission, whereas Kerlin says a 
defendant is “present” if amenable to service under the general longarm statute. Compare Kerlin, 263 S.W.3d at 927, with Deitz, 430 S.W.2d at 490. These 
differing standards are unworkable and inefficient, and will only serve to 
create confusion when litigants attempt to determine if the tolling statute 
applies to their cases. Cf. Sw. 
Bell Tel. Co., L.P. v. Mitchell, 276 S.W.3d 443, 447 (Tex. 2008). 
(“We adhere to our precedents for reasons of efficiency, fairness, and 
legitimacy . . . .” (internal quotations omitted)).[4] Therefore, we overrule Deitz and hold, as we did in Kerlin, that a defendant is “present” in Texas, for 
purposes of the tolling statute, if he or she is amenable to service under the 
general longarm statute, as long as the defendant has 
“contacts with the state sufficient to afford personal jurisdiction.” Kerlin, 263 S.W.3d at 927. 
In most cases, the general longarm statute will 
establish this “presence,” as its “broad doing-business language ‘allows the 
statute to reach as far as the federal constitutional requirements of due 
process will allow.’” Retamco Operating, 
Inc. v. Republic Drilling Co., 278 S.W.3d 333, 337 (Tex. 2009) (quoting 
Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 575 (Tex. 2007)).
            
Because we hold that section 16.063 does not toll the limitations period, 
Hawkins was required to file suit and serve Ashley by May 31, 2005. She failed 
to serve Ashley by this date, so we must consider whether Hawkins exercised due 
diligence in pursuing service after the limitations period expired.[5]
III
            
If a party files its petition within the limitations period, service 
outside the limitations period may still be valid if the plaintiff exercises 
diligence in procuring service on the defendant. Gant v. DeLeon, 786 S.W.2d 259, 260 (Tex. 1990) (per curiam) (citing Zale 
Corp. v. Rosenbaum, 520 S.W.2d 889, 890 (Tex. 1975) (per curiam)). When a defendant has affirmatively pleaded the 
defense of limitations, and shown that service was not timely, the burden shifts 
to the plaintiff to prove diligence. Proulx 
v. Wells, 235 S.W.3d 213, 216 (Tex. 2007) (per curiam) (citing Murray v. San Jacinto Agency, Inc., 
800 S.W.2d 826, 830 (Tex. 1990)). Diligence is determined by asking “whether the 
plaintiff acted as an ordinarily prudent person would have acted under the same 
or similar circumstances and was diligent up until the time the defendant was 
served.” Id. at 216. Although a fact question, a 
plaintiff’s explanation may demonstrate a lack of diligence as a matter of law, 
“when one or more lapses between service efforts are unexplained or patently 
unreasonable.” Id. Thus, Hawkins has the burden to “present evidence 
regarding the efforts that were made to serve the defendant, and to explain 
every lapse in effort or period of delay.” Id.
            
Hawkins alleges the collision occurred on May 31, 2003, setting May 31, 
2005, as the date the two-year limitations period expired. Tex. Civ. Prac. & Rem. 
Code § 16.003(a) (setting a two-year 
limitations period for personal injury actions). In her 
motion for summary judgment, Ashley pointed out that she was not served until 
May 10, 2006, almost a year after the limitations period expired. Therefore, the 
burden shifted to Hawkins to explain how she was diligent in attempting to serve 
Ashley. See Proulx, 235 
S.W.3d at 216. The record reflects that Hawkins filed suit on April 1, 
2005, and the clerk first mailed service to Ashley in Conroe, Texas, at an 
address found on Ashley’s Texas drivers license and on the accident report. This 
citation was returned unclaimed. Then, on June 7, 2005, Hawkins requested, and 
the clerk mailed, service to an address in Sacramento, California. This was 
returned on July 27, 2005. No other service was attempted until March 17, 2006, 
at which time Hawkins provided the clerk with a new address in Rio Linda, 
California. Almost two months later, a Sacramento County sheriff personally 
served Ashley at that address. However, a period of almost eight months lapsed 
between July 27, 2005 and March 17, 2006. During this time, the record reflects 
that the trial court twice set the case for dismissal based on a want of 
prosecution, dismissing it on January 17, 2006, only to reinstate it following a 
motion by Hawkins. In her response to the motion for summary judgment, Hawkins 
asserted that she made a diligent effort to serve Ashley, citing the two 
attempts at service in April and June 2005, and also explaining:
 
            
Counsel for [Hawkins] and his assistants have spent approximately twenty 
(20) hours searching for [Ashley’s] whereabouts. Many search engines, including 
Zabasearch, Google, DCS Information Systems (a 
reliable intelligence source for business), People Search, Intelius, and other sources have been utilized. Counsel for 
[Hawkins] personally went to the last known address of [Ashley] and canvassed 
the apartment project where she once resided. Although [Ashley] moved to 
California many months before she was finally served, she never changed her 
address on her driver’s license.
            
[Ashley] was finally located at a different address in Rio Linda, 
California and served with citation.
 
Hawkins also 
attached an affidavit from her counsel, stating that he was a licensed private 
investigator for over fifteen years, that he is “acquainted with the resources 
utilized by private investigators in skip tracing,” and that he utilized those 
resources in attempting to locate Ashley. In addition to the methods listed in 
the motion, the affidavit listed other websites and public records he searched. 
She also contended that the Montgomery County Voter Registration Database listed 
Ashley’s address in Conroe, Texas.[6]
            
We agree with the trial court and hold that, as a matter of law, Hawkins’ 
responses do not create a fact issue as to diligence, as this eight-month gap in 
time is left unexplained. See, e.g., Gant, 786 
S.W.2d at 260. Hawkins stated that she spent approximately twenty hours 
searching for Ashley, although she does not specify when this time was spent. 
Either these twenty hours were expended early on, in which case, the diligence 
of the search later ceased; or, these hours were spread over eight months, in 
which case the search was never diligent. Either way, Hawkins failed to meet her 
burden.
            
As a comparison, in Proulx, we held that 
a plaintiff’s thirty-seven attempts at five different addresses over the course 
of nine months exhibited continuing diligence to preclude summary judgment. 
235 S.W.3d at 217. After numerous unsuccessful attempts 
at effectuating service, the plaintiff in Proulx sought substitute service because it 
was clear the defendant was attempting to evade service by “moving from relative 
to relative and doing his best to avoid service from the courts and creditors.” 
Id. In Gant, however, we held that a plaintiff was not diligent as 
a matter of law where no explanation was offered for gaps in service for three 
different periods ranging from six to twenty months. 786 
S.W.2d at 260 (citing cases with seventeen, ten, six, seven, and three month 
gaps). These cases clarify that, while the time period is important, it 
is not necessarily determinative of the question of diligence. Rather, we must 
consider the overall effort expended over the gap in service, and whether the 
search ceased to be reasonable, especially when other methods of service were 
available. See Proulx, 235 
S.W.3d at 217; Gant, 786 S.W.2d at 260.
            
Notably, the record does not indicate that Hawkins attempted any form of 
service other than service by mail or delivery. If Hawkins was unable to locate 
Ashley, or if Hawkins thought Ashley was evading service, other methods of 
service were available. In particular, no substitute service such as service by 
publication was attempted. See Tex. R. Civ. P. 109 (providing for 
service by publication when defendant’s residence is unknown, the defendant is 
transient, or the defendant is absent or is a nonresident of the state); see 
also Parmer v. DeJulian, 
No. 12-07-00479-CV, 2008 WL 4225994, *6 (Tex. App.—Tyler Sept. 17, 2008, no 
pet.) (mem. op., not designated for publication) 
(finding lack of diligence as a matter of law where plaintiff relied on its own 
efforts only to locate defendant over a one-year period, rather than resorting 
to other methods such as hiring a private investigator or process server, or 
performing citation by publication); Hodge v. Smith, 856 S.W.2d 212, 
215–17 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (finding diligence was 
not lacking as a matter of law where plaintiff requested service by publication, 
four months after suit was filed and after other attempts to locate the 
defendant). Hawkins recognized its availability by stating, in her 
October 11, 2005, motion to retain the case on the court’s docket, that she 
“utilized various investigative resources to no avail” and that she “would like 
additional time to locate [Ashley] before resorting to service by publication[,] 
which is expensive.” But from the time of that motion, an additional five months 
lapsed before service was attempted and seven months until service was achieved. 
Although service by publication should not be a first resort, when a plaintiff 
is continuously unable to locate a defendant, its availability should not be 
overlooked. See Wood v. Brown, 819 S.W.2d 799, 800 (Tex. 1991) (per curiam) (noting that service by publication is to be used 
only if the requirements of Rule 109 of the Texas Rules of Civil Procedure are 
met); see also Carter v. MacFadyen, 93 S.W.3d 
307, 314–15 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (“A flurry of 
ineffective activity does not constitute due diligence if easily available and 
more effective alternatives are ignored.”).
IV
            
For these reasons, we reverse the court of appeals’ judgment and 
reinstate the trial court’s grant of summary judgment in favor of Ashley.
 
_______________________________
Paul W. 
Green
Justice
 
OPINION DELIVERED: June 26, 
2009







[1] Ashley has not 
alleged she does not have “contacts with the state sufficient to afford personal 
jurisdiction.” Kerlin, 263 
S.W.3d at 927.

[2] Act of May 8, 
1959, 56th Leg., R.S., ch. 502, § 1, 1959 Tex. Gen. 
Laws 1103, 1103–04 (now codified at Tex. 
Civ. Prac. & Rem. Code § 17.062).

[3] This section 
provides:
            

Substituted Service On 
Chairman of Texas Transportation Commission  
(a) The chairman of the Texas Transportation Commission is an agent for 
service of process on a person who is a nonresident or an agent of a nonresident 
in any suit against the person or agent that grows out of a collision or 
accident in which the person or his agent is involved while operating a motor 
vehicle in this state.
 
(b) Process may 
be served on the chairman in accordance with this section for a nonresident who 
was a resident at the time the cause of action accrued but has subsequently 
moved from the state.
 
Tex. Civ. Prac. & Rem. 
Code § 17.062.

[4] Deitz’s continuing application may also pose 
constitutional problems. See, e.g., Bendix 
Autolite Corp. v. Midwesco 
Enters., Inc., 486 U.S. 888, 892–94 (1988) (holding that states cannot 
condition limitations statutes on requirement that nonresidents appoint a local 
agent for service); see also Key Western Life Ins. Co. v. State Bd. of 
Ins., 350 S.W.2d 839, 849 (Tex. 1961) (“[I]f possible, it is the duty of the 
courts to construe a statute in such a way as to avoid repugnancy to the 
Constitution.”).

[5] Because we 
hold that section 16.063 does not apply in this instance, we do not reach 
Ashley’s constitutional argument. Nor do we consider whether the constitutional 
argument was waived by Ashley’s failure to specifically present it at the court 
of appeals or in her petition for review.

[6] Hawkins also 
incorporated, by reference, her earlier motion to reinstate her dismissed case, 
filed January 31, 2006. This motion is almost verbatim to the response to the 
motion for summary judgment, and also includes the argument that twenty hours 
had been expended on searching for Ashley, and that she had been located in Rio 
Linda, California. So it is clear from this motion that no additional time was 
expended between January 31, 2006, and March 17, 2006. In fact, this motion 
makes clear that Hawkins was aware of Ashley’s location almost two months prior 
to actually serving her. While an almost two-month delay would not amount to a 
lack of diligence as a matter of law under many circumstances, Hawkins’s effort 
here, coupled with the almost five months of unexplained gap from July of 2005 
to January of 2006, amounts to a lack of diligence as a matter of 
law.