In re CLARK CONTRACTING
SERVICES, INC., Debtor,

Wells Fargo Equipment
Finance, Appellant,

v.

Jose C. Rodriguez, Chapter 7 Trustee
for Clark Contracting Services,
Inc., Appellee.

Bankruptcy No. 08–50046–LMC.
Adversary No. 05045–LMC.
Civil Action No. SA–09–CV–726–FB.

United States District Court,
W.D. Texas,
San Antonio Division.

April 14, 2010.

Marshall L. Armstrong, Robert L. Barrows, Warren, Drugan & Barrows, P.C., San Antonio, TX, for Appellant.

Dean William Greer, Law Offices of Dean W. Greer, San Antonio, TX, for Appellee.

## *ORDER REVERSING ORDER OF THE BANKRUPTCY JUDGE DATED NOVEMBER 28, 2008*

FRED BIERY, District Judge.

This is an appeal from a judgment of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division. As set forth in its Order of November 28, 2008, the Bankruptcy Court granted Clark Contracting Services, Inc.'s motion for partial summary judgment and denied Wells Fargo Equipment Finance's motion for partial summary judgment. This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 158. After careful consideration, the Court is of the opinion that the Order of the Bankruptcy Judge dated November 28, 2008, granting appellee's motion for partial summary judgment and denying appellant's motion for partial summary judgment, should be reversed with instructions that the Bankruptcy Court grant appellant's motion for partial summary judgment.

### *STANDARD OF REVIEW*

Bankruptcy rule 8013 sets forth the standard of review for orders issued by the bankruptcy courts. Rule 8013 provides:

On appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the

opportunity of the bankruptcy court to judge the credibility of the witnesses. FED. R. BANKR.P. 8013. A district court reviews legal conclusions *de novo. In re Foster Mortgage Corp.,* 68 F.3d 914, 917 (5th Cir.1995). A finding of fact premised on an improper legal standard or on a proper legal standard improperly applied "loses the insulation of the clearly erroneous rule." *In re Missionary Baptist Found., of Am.,* 818 F.2d 1135, 1142 (5th Cir.1987) (citation omitted).

## BACKGROUND

In November of 2008, the Bankruptcy Court found that Wells Fargo Equipment Finance ("Wells Fargo"), a purchaser of a secured loan made by CIT Group/Equipment Financing Inc. ("CIT") to Clark Contracting Services, Inc. ("Clark") for the purchase of six equipment trucks, did not have a perfected security interest in those trucks because CIT failed to apply with the county assessor/collector to have the certificates of titles for the trucks reissued to reflect Wells Fargo as the lienholder. The result of the decision is that Wells Fargo was relegated to the status of an unsecured creditor in the bankruptcy proceedings of Clark. In making its November 28, 2008 ruling, the Bankruptcy Court interpreted the Texas Certificate of Title Act ("TCOTA") provisions regarding re-titling upon assignment of a lien as mandatory.

The opinion of the Bankruptcy Court was "viewed as an anomaly and has been widely criticized." *In re Scott,* 427 B.R. 123, 138 (Bankr.S.D.Ind.2010) (citing *Red Flag: Texas Court Requires Assignees of Vehicle Contracts to Get Lien Noted on New Certificates of Title,* CLARK'S SECURED TRANSACTIONS (Feb. 2009); Alvin C. Harrell, *Case Note, Clark Contracting Services, Inc. v. Wells Fargo Does an Assignee of a CT Lien Entry Become Unperfected,* 62 CONSUMER FIN. L.Q.

REP. 274 (2008)). After the Clark *Contracting decision,* a bankrupt debtor in Arkansas challenged that state's laws regarding re-titling upon assignment of a motor vehicle lien. *In re Johnson,* 407 B.R. 364, 365 (Bankr.E.D.Ark.2009). The Arkansas Bankruptcy Court assigned to hear the case recognized that the Arkansas certificate of title statute used similar working to that of the Texas statute, but rejected the *Clark Contracting* decision. *Id.* at 367, 369. The Arkansas Bankruptcy Court instead came to the conclusion that assignee lienholders in Arkansas do not need to re-title to enjoy the perfected status of their assignors. *Id.* at 369. Another bankruptcy court in Arkansas adopted the reasoning and analysis of *In re Johnson* when concluding that, while the assignee of a motor vehicle loan did not have its name appear on certificate of title, it nonetheless had perfected a security interest in the vehicle by virtue of having the name of its assignor reflected on the certificate of title as the lienholder. *In re Gaines,* 414 B.R. 494, 497 (Bankr.E.D.Ark. 2009). "[M]ost courts," the In re Gaines decision pointed out, "recognize that the assignment of a lien does not create a 'new' lien" and, therefore, any re-titling of the lien is permissive under the Arkansas statute which had similar working to that of Texas. *Id.* A Bankruptcy Court in Indiana reached the same result on March 11th of this year. *In re Scott,* 427 B.R. 123, 137–38.

Here in Texas, lawmakers acted quickly to overturn the *Clark Contracting* decision. In June of 2009, the Texas Legislature amended the TCOTA to clarify that re-titling upon assignment of a lien is permissive such that its assignees or assignors can re-title upon assignment if they choose to do so, but the TCOTA does not require re-titling in order to continue perfection. Senate Bill 1592, S.B. 1592, 81st

Leg., Reg. Sess. (Tex. 2009). Relying in part on the amendment to the TCOTA, Wells Fargo argues in this appeal that re-titling upon reassignment is permissive. Clark recognizes the certificate of title statute has been amended, but argues the *Clark Contracting* decision should nonetheless be upheld.

## DISCUSSION

 In construing the TCOTA statute and its subsequent amendment, the Court must consider several factors. As set forth by the Texas Supreme Court:

> Our objective when construing a statute is to determine and give effect to the Legislature's intent. To ascertain that intent, we look first to the statute's plain language. We must view the statute's terms in context, and give them full effect. Under the Code Construction Act, we may look to the statute's legislative history in gleaning the Legislature's intent. We also bear in mind the circumstances under which the statute was enacted, and the consequences of any particular construction.

*Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex.1999) (citations omitted). The Court further must "presume that the Legislature acted with knowledge of the common law and court decisions." *Id.* In determining and giving effect to the intent of the Legislature, this Court must conclude that the *Clark Contracting* decision is contrary to the Texas certificate of title law, the general rules of the UCC, and public policy.

With regard to the plain language of the S.B. 1592 amendment, the goal of the drafters of the TCOTA legislation was to amend the assignment provisions in the TCOTA to clearly reflect the intent of the Legislature to make re-titling upon assignment permissive. The amendment, which

is found at Section 6 of Acts 2009, 81st Leg., ch. 814, provides:

> This Act is *intended to clarify that under existing law, an assignment of a recorded security interest may be recorded on the title, but does not have to be recorded on the title to retain the validity, perfection, and priority of the security interest* securing the obligation assigned to the assignee.

Tex. S.B. 1592 § 6 (amending TEX. TRANSP. CODE ANN. § 501.114 (Vernon 2007)). The purpose of the amendment was thus, not to make a change in the law, but to clarify what has been the law since the statute was enacted in 1995. In other words, in order to manifest legislative intent, language was added to the amendment to express the nature of the legislation as a clarification of existing law. *See id.*

 The desired effect of section 6 is, therefore, to protect the perfected lien status of assignee lienholders who took assignment prior to the effective date of the legislation and did not re-title. Without such language, the amended TCOTA statute may only operate prospectively to assignments made after the June 19, 2009, effective date of S.B. 1592, continuing to leave pre-effective date assignee lienholders, such as Wells Fargo, un-perfected until they made an application to the State to reflect their status as lienholders on certificates of title. While Texas law traditionally cautioned against giving retroactive effect to amended statutes, recent case law suggests that amendments to statutes which reflect the Legislature's intent to clarify, rather than change, existing law may be applied by the Courts to claims which accrue prior to the effectiveness of the amendment, as if the law at the time of the accrual of the claim was the statute as amended. As the Texas Supreme Court explained:

[W]hen the Legislature does not acquiesce in the court's construction [of a statute], when instead it immediately makes clear that the proper construction adopted by the agency charged with enforcing the statute, judicial adherence to the decision in the name of *stare decisis* may actually disserve the interests of 'efficiency, fairness and legitimacy' that support the doctrine. It is hardly fair or efficient to give effect to a judicial construction of a statute for a brief period of time when the Legislature has reinstated for future cases the same rule that had been followed before the court's decision. The doctrine of *stare decisis* does not justify inequity and confusion in such a narrow gap of time.

*Southwestern Bell Tel. Co. v. Mitchell,* 276 S.W.3d 443, 447–48 (2009). A similar result was reached in the bankruptcy context. *In re Adams,* 307 B.R. 549, 557 (Bankr.N.D.Tex.2004) ("The legislative history of the amendment supports the proposition that the changes to the cure provision were meant to further clarify already existing rights on the part of the lender."); *see also* Michael D. Jewesson, *Texas Legislature Passes Certificate of Title Bill Negating Effect of Clark Contracting Decision,* 28 No. 8 LJN'S EQUIPMENT LEASING NEWSL. 1 (Sept. 2009) (arguing in favor of giving retroactive effect to S.B. 1592). The United States Court of Appeals for the Fifth Circuit and a federal district court in this Division have also given retroactive effect to certain procedural and remedial amendments which

merely clarified, rather than changed, statutory law. *See, e.g., NCNB Tex. Nat'l Bank v. Cowden,* 895 F.2d 1488, 1500–01 (5th Cir.1990) (essentially giving retroactive effect to amendments which merely clarified law concerning bridge bank statute foreclosure); *Triland Holdings & Co. v. Sunbelt Serv. Corp.,* 884 F.2d 205, 207 (5th Cir.1989) (giving retroactive effect to certain jurisdictional provisions of Financial Institutions Reform, Recovery and Enforcement Act); *Davidson v. Mills,* 821 F.Supp. 1176, 1178–79 (W.D.Tex.1993) (concurring with rational of other federal courts and following their holdings on issue of amendments which merely clarify, rather than change, statutory law).

To further harmonize the TCOTA statute with Chapter 9 of the UCC, the amendment to the TCOTA also added language to clarify that recording a lien on a certificate of title in accordance with the statute will give the lienholder priority over the rights of a lien creditor. *See United Savs. Ass'n v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (explaining that provisions of statutes are often "clarified by the remainder of the statutory scheme ... because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law."). "Section 9–311(b) of Chapter 9 indicates that compliance with the requirements of a certificate of title statute for obtaining priority over the rights of a lien creditor is equivalent to the filing of a financing statement under Chapter 9".[1]

---

1. UCC § 9–311(b) states:

 [Compliance with other law.] Compliance with the requirements of a statute, regulation, or treaty described in subsection (a) for obtaining priority over the rights of a lien creditor is equivalent to the filing of a financing statement under this article. Except as otherwise provided in subsection (d) and Sections 9–313 and 9–316(d) and (e)

 for goods covered by a certificate of title, a security interest in property subject to a statute, regulation, or treaty described in subsection (a) may be perfected only by compliance with those requirements, and a security interest so perfected remains perfected notwithstanding a change in the use or transfer of possession of the collateral. The Legislative Note further provides:

Michael D. Jewesson, *Texas Legislature Passes Certificate of Title Bill Negating Effect of Clark Contracting Decision*, 28 No. 8 LJNEQLN 1, at 1–2 (Sept. 2009). "Thus, clarifying that for purposes of Chapter 9, lienholders of record are the equivalent of perfected secured parties that have filed financing statements." *Id.* (citing Tex. S.B. 1592 § 4, amending TEX. TRANSP. CODE ANN. § 510.113(b) (Vernon 2007)). It is thus clear from the stated language of the Legislature in enacting S.B. 1592 that recording an assignment of a lien is not mandatory under the State's certificate of title law. Based on this amendment alone, the *Clark Contracting* decision is contrary to the intent of the Texas Legislature.

The Bankruptcy Court, however, did not have the benefit of S.B. 1592. The pre-amendment language of the TCOTA, the relationship of that statute to Article 9 of the UCC, and public policy concerns therefore warrant further discussion. To this end, further details are set forth below.

This case was decided on cross-motions for summary judgment based on undisputed facts. Clark was a construction company which provided services related to the clearing and paving of land for commercial developments. In late 2006 and early 2007, Clark acquired five specialized trucks and one large piece of construction equipment, each of which was subject to the TCOTA. The secured lender was CIT Group/Equipment Financing, Inc. ("CIT"). Clark signed promissory notes for each piece of equipment and a Master Security Agreement covering all of the collateral. Certificates of title were issued for each

vehicle. CIT noted its lien on each title and took possession of the titles.

In June of 2007, Wells Fargo purchased CIT's receivables and took delivery of the six certificates of title. Relying on CIT's lien as noted on each title, Wells Fargo did not apply for new titles with its own name shown as lienholder. In early 2008, facing potential foreclosure actions by a number of creditors, Clark filed Chapter 11 bankruptcy, becoming a debtor in possession with the avoidance powers of a trustee.

In April of 2008, Clark brought an adversary proceeding against Wells Fargo seeking to avoid the six liens on the theory that, when Wells Fargo acquired CIT's secured position, it should have applied for new titles showing it—instead of CIT—as lienholder. The failure to do so, Clark argued, meant that Wells Fargo's security interest was unperfected under the TCOTA and subject to avoidance under section 544 of the Bankruptcy Code. Clark did not dispute the validity or enforceability of the assignment, only perfection of the security interest. In response, Wells Fargo argued the TCOTA does not require an assignee to take any additional steps to perfect liens which were already duly perfected by the assignor; instead, re-titling under the TCOTA is optional.

Wells Fargo relied on the UCC and its notice filing principle. Specifically, Wells Fargo relied on UCC § 9–310(c), which states that assignees of perfected security interests in collateral enjoy the perfected status of their assignors without the need for an additional Article 9 filing. Under this theory, any subsequent creditor or transferee would see that the collateral is

---

This Article contemplates that perfection of a security interest in goods covered by a certificate of title occurs upon receipt by appropriate State officials of a properly tendered application for a certificate of title on which the security interest is to be indicated, without a relation back to an earlier time. States whose certificate-of-title statutes provide for perfection at a different time or contain a relation-back provision should amend the statutes accordingly.

encumbered because, under the notice filing principle of Article 9, this is sufficient for perfection. Wells Fargo also cited Official Comment 4 to UCC 9–310, which extends the same rationale to titled vehicles:

> Similarly, Subsection (c) applies to the assignment of a security interest perfected by compliance with a statute, regulation, or treaty under Section 9–311(b), such as a certificate-of-title statute. *Unless the statute expressly provides to the contrary,* the security interest will remain perfected against creditors of and transferees from the original debtor, even if the assignee takes no action to cause the certificate of title to reflect the assignment or to cause its name to appear on the certificate of title.

(Emphasis added).

Wells–Fargo agreed the Texas UCC defers to the TCOTA insofar as the original secured creditor must have its lien noted on the title in order to perfect in the first place under UCC 9–311(a). Nonetheless, Wells Fargo maintained, if the original security interest is perfected by lien notation, an assignment of the security interest does not affect its perfected status and no new titling is required because the TCOTA does not "expressly provide to the contrary."

The Bankruptcy Court determined the TCOTA bests the UCC. The key issue, the Bankruptcy Court stated, is "how the UCC and the Certificate of Title Act interact with respect to the assigned liens on motor vehicles." Finding the TCOTA conflicts with the more lenient UCC rule, the Court ruled in favor of Clark. Specifically, the Bankruptcy Court held that Wells Fargo made a fatal mistake by electing not to record the assignments because "the Certificate of Title Act was enacted specifically to ensure that assigned liens on vehicles

[subject to the statute] must be reflected on the certificates of title as a condition of continuous perfection." For the Bankruptcy Court, the decisive point was that the Texas certificate of title statute expressly mandates re-titling when a lien is assigned from one secured creditor to another, and that the UCC defers to such explicit language.

The Bankruptcy Court explained:

> [w]here the collateral is a motor vehicle, the UCC prescribes a completely different set of rules for perfection Rather than relying on a generally searchable database, the perfection scheme relies on physical notation of security interests on the very document required to legally transfer a motor vehicle. This scheme reflects the Act's larger purpose to assure the ability to sell vehicles without the need of enforced disclosure to the purchaser of the existence of a lien on the vehicle.

In short, the Bankruptcy Court found that, under the Texas certificate of title regime, third parties "are entitled to rely on what appears on the certificate of title, and look no further." In the view of the Bankruptcy Court, to further the purpose of the TCOTA, it is necessary for the title to reflect the name of the current lienholder.

The Bankruptcy Court next turned to the precise language in Section 501.114 of the TCOTA. The statute sets forth a procedure to document the assignment of a security interest in a titled motor vehicle. The TCOTA provides:

> A lienholder **may** assign a lien recorded under Section 501.113 by ... applying to the county assessor-collector for the assignment of the lien ... and ... notifying the debtor of the assignment.... On receipt of the completed application and fee, the department ... may amend the department's records to substitute the subsequent lienholder for the previ-

ous lienholder ... and ... shall issue a new certificate of title.... The issuance of a certificate of title ... is recordation of the assignment. The time of recordation of a lien assigned under this section is considered to be the time the lien was recorded under Section 501.113. (Emphasis added).

Wells Fargo argued the word "may," as used in § 501.114, means that the procedure laid out in the TCOTA statute is optional, not mandatory. Wells Fargo contended, if the assignee chooses to rely on the assignor's lien notation, it runs the risk of the assignor's release of its lien and sale to a bona fide purchaser, but this is a business decision. Without a release, Wells Fargo argued, the lien in the name of the assignor remains perfected and should stand up in a bankruptcy proceeding.

The Bankruptcy Court rejected this argument on the ground that, if it were correct, the re-titling option would have been granted to the assignee rather than the assignor. The Bankruptcy Court also reasoned that, under the statutory procedure, the assignee enjoys the benefit of relation-back perfection. The Bankruptcy Court summarized its analysis in the following fashion:

> Because of the importance of the correctness of the information on the certificate of title to innocent third parties acquiring the vehicle, the statute may be understood as an *authorization* to assign liens, *provided that* the parties to the assignment follow the procedures laid out there.

(emphasis in original).

In the view of the Bankruptcy Court, the focus must be on the TCOTA, not Article 9 of the UCC. In arguing no re-titling is required for an assignment of a security interest, Wells Fargo relied *inter alia* on Commentary No. 12 issued by the Permanent Editorial Board of the UCC and adopted as part of Comment 4 to UCC 9–310. The Bankruptcy Court acknowledged the "general thrust of the Commentary" evidences an intent by the drafters of the UCC that, when perfection is governed by lien notation on a certificate of title, certificate of title statutes should only be read to apply to the original perfection of the security interest, not to the assignment of a perfected security interest. The Bankruptcy Court then quoted this language from the commentary: "It is first necessary to ascertain whether the certificate of title statute applicable to the particular transaction contains provisions concerning an assignment of a security interest and, if so, whether such provisions relate to perfection." The Bankruptcy Court considered this language to be reflective of complete deference by the UCC to state certificate of title statutes. As stated by the Bankruptcy Court:

> The Commentary discusses a variety of situations in which the state's certificate of title enactment might be ambiguous regarding assignment, or might not tie the assignment of a security interest to its perfection. While there is a strong expressed policy in favor of continued perfection, there is also a recognition that, when a given state has been specific about tying assignment to perfection, the state enactment must be respected.

Finally, the Bankruptcy Court rejected Wells Fargo's citation to a number of certificate of title laws from other states, where the Legislature uses language such as: "*The assignee may, but need not* perfect the assignment, have the certificate of title endorsed or issued with the assignee named as holder of a security interest or lien...." (citing FLA. STAT. 319.27(6)(d) (2008)) (emphasis added). The Bankruptcy Court concluded that, while other states

have other statutory language, this has no bearing on the language of the TCOTA.

In sum, the decisive point for the Bankruptcy Court was that the Texas certificate of title statute expressly mandates re-titling when a motor vehicle lien is assigned from one secured creditor to another, and the UCC defers to such explicit language. The Bankruptcy Court thus held that the TCOTA requires assignees of security interests to apply for a new title showing the name of the assignee as lienholder. Stated another way, it was the opinion of the Bankruptcy Court that simply relying on the title with the name of the assignor as lienholders is insufficient; in the absence of a new title reflecting the name of the assignee, the assignee's security interest is unperfected and the debtor-in-possession prevails under the Bankruptcy Code.

In reviewing the opinion of the Bankruptcy Court, this Court initially notes that the decision fails to consider the rule that legislative intent must be considered in light of the plain language of the statute. Specifically, with regard to statutory construction, the word "may" as used in § 501.114 of the TCOTA seems optional, not mandatory. Had the Texas Legislature intended to require re-titling upon assignment of a security interest in a motor vehicle, it could have used language such as: "If a perfected security interest in a motor vehicle is assigned, a person **may** continue this perfected status **only by** recording the name of the new lienholder on a new certificate of title." Indeed, the Texas Legislature used the "may . . . only by" language in TCOTA § 501.111, which sets forth the general requirement for perfection by lien notation:

> Sec. 501.111. PERFECTION OF A SECURITY INTEREST. (a) Except as provided in subsection (b) [governing motor vehicles held as inventory], a person **may** perfect a security interest in a

motor vehicle that is the subject of a first or subsequent sale **only by** recording the security interest on the certificate of title as provided by this chapter.

(emphasis added). A persuasive argument can be asserted that the contrast between the use of "may" in § 501.114 and "may . . . only by" in § 501.111 reflects a legislative decision to require the name of the first lienholder on the title as a condition of perfection, while making a re-titling in the name of the assignee optional. *See Red Flag: Texas Court Requires Assignees of Vehicle Contracts to Get Lien Noted on New Certificates of Title,* CLARK'S SECURED TRANSACTIONS (Feb. 2009) (arguing that contrast in provisions of TCOTA reflects legislative intent to make § 510.114 optional).

Moreover, this Court cannot conclude that it makes a difference who applies for a new title. The Bankruptcy Court found it significant that the option to apply for a new title is given to the assignor, rather than the assignee, under § 501.114 of the TCOTA. The Bankruptcy Court does not explain, however, why it necessarily follows that re-issuance of the title in the name of the assignee is required solely because the assignor is charged with the responsibility of documenting the assignment. At this juncture of the vehicle titling proceedings, the assignor is generally in control of the title, "so it is reasonable for the assignor to be responsible." *Red Flag,* CLARK'S SECURED TRANSACTIONS (Feb. 2009), at 4. Moreover, under § 501.114 of the statute, the application for a new title must be signed by the assignee. The TCOTA thus recognizes that it takes both the assignor and the assignee to complete the re-titling process, indicating an intent to create a stop-gap for both parties.

Additionally, a persuasive argument can be made that relation-back applies without

re-titling. In relying on relation-back language in the TCOTA, the Bankruptcy Court noted that: "The time of the recordation of a lien assigned under this section [n. 16: In this case, that would be the first lien originally granted to CIT] is considered to be the time the lien was recorded [by the assignor] under Section 501.113." (citing TEX. TRANSP. CODE ANN. § 501.113 (Vernon 2007)). The Bankruptcy Court determined that the only way for the lien of an assignee to relate-back to the time of the assignor's recordation is by using the re-titling procedure set forth in § 501.114. As one commentator noted:

> The [TCOTA] statute, however, does not say that. It simply gives assurance to both assignor and assignee that the act of re-titling doesn't negate the date of the original perfection. If the assignor's lien remains on the title, there is no reason that the assignee's perfected status should not relate-back; it is a continuously perfected lien.

*Red Flag,* CLARK'S SECURED TRANSACTIONS (Feb. 2009), at 4.

Further, under the "notice filing" principle, it is reasonable to conclude that third-parties know, or should know, the vehicle is encumbered. The Bankruptcy Court was concerned that failure to show the name of the assignee in place of the assignor would mislead third-parties. However, a third-party, such as a bona fide purchaser or subsequent secured lender, would presumably see that the vehicle was encumbered and could obtain further information about an assignment from the assignor. *Red Flag,* CLARK'S SECURED TRANSACTIONS (Feb. 2009), at 4. There is no indication a third-party's reliance interest is unprotected, nor is there reason to believe a non-relying bankruptcy trustee or debtor-in-possession would be prejudiced. *Id.* "The salutary principle of 'notice filing' applies just as

strongly to a certificate of title regime as to UCC financing statements." *Id.* As has been noted: "If the BFP and the assignor collude to release the lien, that's a risk that the assignee has chosen to take by failing to use the optional re-titling procedure." *Id.*

A persuasive argument can also be made that the Bankruptcy Court created an unnecessary conflict between the Texas certificate of title statute and the UCC. *Red Flag,* CLARK'S SECURED TRANSACTIONS (Feb. 2009), at 4–5 (arguing Texas Bankruptcy Court created unnecessary conflict). The Bankruptcy Court did not address Comment 4 to UCC 9–310, which excuses re-titling upon assignment of the security interest unless the state certificate of title law "expressly provides to the contrary." Courts in this jurisdiction recognize the Official Comments to the UCC as persuasive guidance of legislative intent. *See Morgan Buildings & Spas, Inc. v. Turn–Key Leasing, Ltd.,* 97 S.W.3d 871, 876 (Tex.App.-Dallas 2003, pet. ref'd) (citing cases).

The Bankruptcy Court cited, but rejected, the rationale of Comment 12 of the Permanent Editorial Board of the UCC. The language of the commentary provides that, while the UCC defers to state certificate of title laws regarding perfection, there is no deference on the issue of assignment—unless the state certificate of title law is unambiguous in mandating re-titling upon assignment. UCC 9–310 PEB Commentary No. 12. The commentary further states that, if there is any doubt about whether a state certificate of title statute requires the assignment to be noted on the certificate of title, the doubt should be resolved in favor of the Article 9 rule that no further steps of perfection are required when a security interest is assigned. *Id.* In this case, given the Legisla-

ture's use of the word "may" in section 501.114, the TCOTA is at least ambiguous.

Finally, even if there were a conflict between the TCOTA and the UCC, the Texas Certificate of Title Act states that the UCC rule prevails. The Bankruptcy Court also did not mention § 501.005 of the TCOTA, which expressly states that, in case of a conflict with the UCC, the UCC controls. Thus, even presuming there were a conflict, the TCOTA itself states that the UCC prevails. *See Red Flag,* CLARK'S SECURED TRANSACTIONS (Feb. 2009), at 5 ("We don't think there's a conflict between the Texas COTA and the UCC; but even if there were a conflict, the Texas COTA itself states that the UCC rule prevails.").

With regard to public policy concerns, the Texas decision stands alone. Research has uncovered no other court in the country which has held that its certificate of title statute mandates a re-titling showing the assignee as lienholder when a security interest is assigned. As discussed below, given the consistency of other state statutes, coupled with the general rule under the UCC, a persuasive argument can be made that the TCOTA statute on the assignment point should be construed against mandatory re-titling. *See Red Flag,* CLARK'S SECURED TRANSACTIONS (Feb. 2009), at 5 (arguing against re-titling as matter of public policy). As another commentator explained:

> Many states have statutes that clearly provide that assignee lienholders need not apply for re-titling in order to enjoy the perfected status of their assignors. See, Cal. Veh.Code § 5908 (2000); Fla. Stat. § 319.27(6)(d) (2009); Ga.Code Ann. § 40–3–50(b) (2009); Mich. Comp. Laws § 257.238(b)(2) (1979); Mo.Rev. Stat. § 201.630(202); N.Y. Veh. & Traf. Law § 2120(b) (2009). Other state statutes are silent as to assignments of cer-

tificates of title (see, Ind.Code Ann. § 49–501 to–530 (2008); Va.Code Ann. §§ 46.2–636 to–638 (2009)), have assignment provisions in their certificate of title statutes that do not appear to address the perfected status of assignee lien holders (see Ark.Code Ann. § 27–14–908 (2007); N.M. tat. § 66–3–111 (2008)) or are otherwise ambiguous as to the effect o the perfected status of an assignee that fails to re-title (see, Tenn. Code Ann. § 55–3–124 (2007)). Some of these states that have ambiguous, non-applicable or silent statutes have resolved the assignee lienholder perfection issue through cases litigated in their state courts. In each case ..., the courts in these states have all ruled that re-titling is not required for an assignee lienholder to succeed to the perfected status of its assignor. See, *In re Johnson* [407 B.R. 364] (Bankr.E.D.Ark. 2009), *In re Field,* 263 B.R. 323 (Bankr.Idaho 2001), *Sec. Pac. Fin. Serv. v. Signfilled Corp.* [125 N.M. 38] 956 P.2d 837 (N.M.Ct.App.1998), *Bank of N.Y. v. Leake (In re Wuerzberger),* 284 B.R. 814 (Bankr.W.D.Va.2002). Other than Maine, whose motor vehicle certificate of title does not require re-titling for perfection to continue in assignees except in those cases where the assignor continues to service the related loan on behalf of the assignee (a common occurrence in securitizations and other structured finance transactions), the Clark Contracting decision appears to have momentarily isolated Texas as the only state to interpret its certificate of title statute to require re-titling of assigned motor vehicle liens in order to continue the perfected status of assignors in their assignees.

Michael D. Jewesson, *Texas Legislature Passes Certificate of Title Bill Negating Effect of Clerk Contracting Decision,* 28 No. 8 LJNEQLN 1, at 1–2 (Sept. 2009).

Prior to the *Clark Contracting* decision, auto finance companies, banks and warehouse lenders and their legal counsel had interpreted § 501.114(a) of the Texas Certificate of Title Act not to be mandatory. *Red Flag: Texas Court Requires Assignees of Vehicle Contracts to Get Lien Noted on New Certificates of Title.* CLARK'S SECURED TRANSACTIONS (Feb. 2009). That is, the use of the word "may" indicated that the statute did not require an assignor or assignee to comply with the provisions of § 501.114(a) in order to effect an assignment of a lien or for perfection in that lien to continue in the assignee. No published judicial interpretations of § 504.114(a) of the TCOTA existed until *Clark Contracting,* so "assignees relied on (i) the fact that if the legislature had intended the procedures set forth in Section 501.114 to be the sole method of making a valid assignment of a perfected lien it would have used more precise language indicating that to be the case and (ii) the official comments to Article 9 of the Uniform Commercial Code and that of the UCC Permanent Editorial Board in Commentary No. 12 on Section 9–302" *Id.*

According to industry practice, then, finance companies and their Texas legal counsel pre-*Clark Contracting* generally interpreted the TCOTA provisions regarding re-titling upon assignment of a lien as permissive. That is, "assignees or assignors could re-title upon assignment if they chose to do so, but the TCOTA did not require re-titling in order to continue perfection. Michael D. Jewesson, 28 No. 8 LJNEQLN 1, at 2. In fact, to industry practitioners, the TCOTA did not appear to "address the perfected status of an assignee lienholder at all." *Id.* As a result, matters governing the perfected status of a non-filing assignee defaulted back to UCC § 9–310(c), which provides that assignees enjoy the perfected status of their assignors as against creditors of and transferees from the debtor without the necessity of filing a new financing statement reflecting that assignment. *Id.* Industry analysts, however, recognized that the practice of failing to re-title under the TCOTA statute could be "fraught with danger to the assignee." *Id.*

Industry practice further shows that Texas securitizations suffered negatively post-*Clark Contracting. Red Flag,* CLARK'S SECURED TRANSACTIONS (Feb. 2009). During the period between the publication of the *Clark Contracting* decision and the effective date of S.B. 1592, "many auto loan finance companies restarted their dormant securitization programs to take advantage of increased investor interest in buying newly issued asset–backed securities through the Term Asset–Backed Securities Loan Facility." Michael D. Jewesson, 28 No. 8 LJNEQLN 1, at 5. However, the uncertain status of Texas law on assigned liens during this time resulted in at least one finance company withdrawing all Texas auto loans from its securitization. *Id.* Another reduced the number of Texas auto loans to less than 10% of the pool—despite having nearly 50% more Texas loans available for securitization—and effected its securitization on less favorable terms due to inclusion of those loans.

There is also reason to believe that, if enforced, the *Clark Contracting* decision would lead to "increased transaction costs and inconvenience in a commercial environment where secured positions in motor vehicles, like other assets, are constantly assigned." *Red Flag,* CLARK'S SECURED TRANSACTIONS (Feb. 2009), at 5. As discussed by one commentator:

For example, motor vehicle paper is often securitized as a way to create liquidity and thus encourage the extension of credit to consumers and businesses

alike.... When motor vehicle receivables and security interests are assigned from originators to special-purpose vehicles in a securitization, it would be commercially impracticable to require massive re-titling in the name of the special-purpose vehicle in order to protect against the risk of debtor bankruptcy. In fact, many of these securitization transactions are structured so that the debtor will continue to deal with the assignor after the assignment because the assignor retains servicing rights on the contract.

*Id.* "Retitling in this context only creates confusion." *Id.*

While failing to re-title under the TCOTA "can be fraught with danger" to an assignee, the assignor who services the motor vehicle loan in many transactions on behalf of the ultimate assignee may even repurchase the loan "at some point" which results "in a seamless transaction to the car owner." *Id.* Thus, the mere "indication of a lien on the fact of the title, whether or not that lienholder is the current lienholder," promotes the goals of the Texas certificate of title laws. *Id.* These are to prevent: "(1) the theft of motor vehicles; (2) the importation into the state of and traffic in motor vehicles that are stolen; and (3) the sale of an encumbered motor vehicle without the enforced disclosure to the purchaser of a lien secured by the vehicle." Tex. Transp. Code Ann. § 501.003 (Vernon 2007).

Additionally, as discussed above, the identification of the current, unnamed lienholder can in most any situation be determined with a "modest amount of due diligence on the part of the buyer of the vehicle or any prospective lender." Michael D. Jewesson, 28 No. 8 LJNEQLN 1, at 2. Where re-titling is not required by an assignee lienholder to enjoy the perfected status of the assignor, "there is a mod-

est amount of investigation" which may need to be conducted by those engaging in transactions with owners of motor vehicles encumbered by liens. *Id.* However, from a public policy standpoint, the only party which has "any realistic chance of exposure to economic harm" by failing to re-title to reflect an assigned lien "is the assignee lienholder." *Id.*

The Court has reviewed findings of fact of the Bankruptcy Court under a clearly erroneous standard, and the legal conclusions de novo. In so doing, the Court has further construed the TCOTA statute to determine and give effect to the intent of the Texas Legislature. To ascertain this intent, the Court first looked to the plain language of the amendment passed in reaction to the *Clark Contracting* decision, and then to the plain language of the Texas Certificate of Title Act as a whole, viewing the statute's terms in context and giving those terms full effect. The Court also looked to the TCOTA's legislative history in gleaning the Legislature's intent, bearing in mind the circumstances under which the statute was enacted, and the consequences of any particular construction. Based on the language of the Texas Certificate of Title Act, the relationship of the statute to Article 9 of the UCC, and public policy concerns, this Court concludes that the Texas Legislature did not intend for the TCOTA provisions regarding re-titling upon assignment of a lien to be mandatory.

IT IS THEREFORE ORDERED that the decision of the Bankruptcy Court is REVERSED and this matter is REMANDED to the Bankruptcy Court with instructions to grant Wells Fargo's motion for partial summary judgment.

It is so ORDERED.