# Supreme Court of Texas

No. 21-0326

Edward James Mitschke, Jr., Individually and as a
Representative of the Estate of Cody Mitschke, Deceased,

*Petitioner*,

v.

Marida Faiva del Core Borromeo and Blackjack Ranch, L.L.E.,
LLC,

*Respondents*

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

**Argued February 3, 2022**

JUSTICE YOUNG delivered the opinion of the Court.

A properly filed motion for new trial extends a trial court's plenary power over the judgment and extends the time to file a notice of appeal. A timely notice of appeal is an essential prerequisite for the appellate court's jurisdiction. In this case, the notice of appeal was timely only if the deadlines were extended, which depended on whether petitioner's motion for new trial was effective. The court of appeals held that, under binding authority, the motion was ineffective because

petitioner filed it under the wrong cause number. The court of appeals thus dismissed the appeal for lack of jurisdiction.

Bound up in our review of that decision are several important questions involving the doctrine of *stare decisis*. Based on our resolution of those questions, we conclude that petitioner's filing error did not deprive the court of appeals of subject-matter jurisdiction, and we therefore reverse and remand for consideration of the merits.

# I

This case arises from the unfortunate death of Cody Mitschke, the son of petitioner Edward James Mitschke, Jr. Cody, a passenger in an all-terrain vehicle, died after the vehicle spun out of control. Petitioner brought multiple wrongful-death and survival claims against several defendants. Among those defendants were respondents Marida Borromeo and Blackjack Ranch. Respondents eventually moved for a take-nothing summary judgment and the trial court orally granted that motion. Mitschke's counsel then asked the court to sever the claims against respondents, which would allow an immediate appeal. The trial judge explained that he would sever those claims only if a separate written motion was filed; he then signed the summary-judgment order. Twenty-two days later, respondents—not Mitschke—filed a written motion to sever the claims.

The trial court granted the motion to sever the claims against Borromeo and Blackjack Ranch. The severance order was issued under the original cause number (No. 16,735), but in that order, the court also created a new cause number for the severed claims (No. 17,366). The severance transformed the interlocutory summary judgment into a final

2

and appealable judgment, thus commencing the thirty-day period to file a notice of appeal in Cause No. 17,366. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex. 1995); Tex. R. App. P. 26.1.

While the trial court still had plenary power, Mitschke moved for a new trial. Mitschke's written motion referenced the summary-judgment order by subject matter, title, and date; stated the purpose of extending the appellate deadlines; and certified service to all opposing counsel in *both* causes, including counsel for Borromeo and Blackjack Ranch. This routine procedure extends the trial court's plenary power and the appellate deadlines. *See* Tex. R. Civ. P. 329b; Tex. R. App. P. 26.1(a)(1). At least, it does so if done correctly. But Mitschke filed his new-trial motion under the *original* cause (No. 16,735) instead of under the new, severed cause (No. 17,366). Three days before the extended deadlines under Rule 26.1(a) would have run, Mitschke filed a notice of appeal in *both* cause numbers.

The appeals were brought in the Third Court of Appeals in Austin. This Court then transferred them to the Seventh Court of Appeals in Amarillo for docket-equalization purposes. *See* Tex. Gov't Code § 73.001. A transferee court that receives an appeal "must decide the case in accordance with the precedent of the transferor court under principles of stare decisis . . . ." Tex. R. App. P. 41.3. As this Court's comment to the Rule explains, this requirement ensures that the "transfer will not produce a different outcome, based on application of substantive law, than would have resulted had the case not been transferred." *Id.*, cmt.

After receiving the appeals, the Seventh Court requested briefing

3

on a jurisdictional question: whether Third Court precedent required dismissing the appeal in the severed cause as untimely. The Seventh Court received the requested briefing and identified what it regarded as a material conflict in the Third Court's precedent. The Seventh Court concluded that, if the Third Court followed two of its relatively recent cases, it would dismiss the appeal as untimely,[1] but that it would permit the appeal to proceed if it instead followed two of its earlier cases.[2] The Seventh Court noted that, under its own precedent, "a motion for new trial filed under the wrong cause number is effective to extend the appellate deadlines where the motion sufficiently identifies the order or judgment in question." In other words, Seventh Court precedent aligned with the earlier Third Court cases.

But the Seventh Court recognized that its obligation under Rule 41.3 required it to decide the case as if it were a Third Court panel. It thus had to decide, as a transferee court, how to resolve the material conflict in Third Court precedent. "[W]e have found no authority," the court wrote, that prescribes how to choose the proper rule of decision "when there is conflicting precedent within the transferor court." It expressed concern that applying the earlier cases—the ones that most aligned with the Seventh Court's own precedent—would be improper

---

[1] *See Crown Equity LLLP v. Parker*, No. 03-16-00389-CV, 2016 WL 3917203, at *1–2 (Tex. App—Austin July 13, 2016, no pet.); *Levin v. Espinosa*, No. 03-14-00534-CV, 2015 WL 690368, at *2–3 (Tex. App.—Austin Feb. 13, 2015, no pet.).

[2] *See Blizzard v. Select Portfolio Servicing*, No. 03-13-00716-CV, 2014 WL 2094324, at *1 (Tex. App.—Austin May 13, 2014, order) (per curiam); *see also Torres v. Scott & White Clinic*, No. 03-04-00575-CV, 2006 WL 1126221, at *2 (Tex. App.—Austin Apr. 28, 2006, no pet.).

4

"[c]herry-picking" that "would interfere with [the Third Court's] independent judicial functions . . . ." It concluded that following "the most recent jurisprudence from the Third Court" best predicted how a Third Court panel would rule. Accordingly, the Seventh Court dismissed the appeal for want of jurisdiction.[3]

Mitschke sought rehearing and filed a motion to facilitate a retransfer of the case back to the Third Court, anticipating that the Third Court would consider the jurisdictional issue en banc. *See Miles v. Ford Motor Co.*, 914 S.W.2d 135, 137 n.2 (Tex. 1995) (explaining the procedure for a party to request such a transfer). After briefing, the Seventh Court consulted with the Third Court and then informed this Court that it did not believe there was good cause to retransfer the case. This Court denied the request to retransfer. The Seventh Court denied rehearing. Mitschke brought petitions for review to this Court, which we granted and consolidated for briefing and argument.[4]

## II

For transferred cases, Rule 41.3 provides that "the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have

---

[3] No. 07-20-00283-CV, 2021 WL 386429 (Tex. App.—Amarillo Feb. 3, 2021).

[4] As noted, Mitschke appealed under both the new and the original cause numbers, which led to two appeals in the Seventh Court and two petitions for review. In this Court, No. 21-0326 seeks review of the dismissal of the appeal in the severed cause that includes the final judgment, and No. 21-0331 concerns the original cause, in which Mitschke mistakenly filed the motion for new trial.

5

been inconsistent with the precedent of the transferor court." The rule's text underscores that *stare decisis* is a mandatory tool for use in the transferee court's choice-of-law analysis. But even absent the rule's express reference to *stare decisis*, that doctrine would still constrain a transferee court for the simple reason that *stare decisis* binds the transferor court. The Seventh Court had to confront this jurisprudential requirement at the outset of this case, and we therefore begin by addressing how a Texas appellate court, "under principles of stare decisis," should determine its own binding precedent.

Our common-law tradition was built on healthy respect for judicial precedent. As Blackstone put it, "it is an established rule to abide by former precedents, where the same points come again in litigation; as well to keep the scale of justice even and steady, and not liable to waver with every new judge's opinion . . . ." 1 William Blackstone, *Commentaries* *69. Particularly in an era when judges made most of the law, the courts' adherence to their own precedents was essential to building economic and social stability.[5] Commercial and financial decisions would be far more challenging without confidence that courts would honor the legal framework within which those decisions are made. The same is true of any decision involving calculations about risk—decisions in virtually

---

[5] As Dean Henry G. Manne put it, the ability to "rely upon future courts to apply the law in the same way they have in the past—that is, in accordance with the doctrine of precedent or *stare decisis*," generates the concomitant ability "to make business decisions with less uncertainty and therefore lower transaction costs." Henry G. Manne, *The Judiciary and Free Markets*, 21 Harv. J. L. & Pub. Pol'y 11, 18 (1997). The "strong sense" of the role of precedent, he added, has contributed to why many view "[t]he common law . . . as the ultimate accomplishment of Anglo-American jurisprudence." *Id.* at 20.

6

every corner of life, ranging from property, to family, to employment, and beyond.[6]  No society could flourish if its people's investments—in capital, or labor, or any other resource—were not backed by force of law. *Stare decisis* amounts to a judicial commitment to precedent, which is an essential ingredient in the rule of law itself.

One aspect of *stare decisis*—that lower courts must follow the precedents of all higher courts—is commonplace and uncontroversial. Sometimes called "vertical *stare decisis*," this rule is inherent in the structure of "a hierarchical system" of courts.  *Ramos v. Louisiana*, 140 S. Ct. 1390, 1416 n.5 (2020) (Kavanaugh, J., concurring in part). "[H]orizontal *stare decisis*," by contrast, addresses "the respect that [a] [c]ourt owes to its own precedents," *id.*[7]  Under this aspect of *stare decisis*, three-judge panels must follow materially indistinguishable decisions of earlier panels of the same court unless a higher authority has superseded that prior decision.  Typically, higher authority includes a decision from the U.S. Supreme Court, this Court, or the Court of Criminal Appeals; an en banc decision of the court of appeals itself;[8] or

---

[6] *See, e.g.*, *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 457 (2015); Randy J. Kozel, *Settled Versus Right: A Theory of Precedent* 29 (2017) ("Notwithstanding the Court's emphasis on expectations surrounding contract and property rights, reliance interests extend beyond the domain of commercial activities.  They can also attach to decisions involving other rights, such as the freedom of speech and the protection against unreasonable searches and seizures.").

[7] Texas intermediate appellate courts also have used and explained the terms "vertical" and "horizontal" *stare decisis*.  *See, e.g.*, *Phelps v. State*, 532 S.W.3d 437, 443 n.6 (Tex. App.—Texarkana 2017, pet. ref'd).

[8] The Sixth, Eighth, Tenth, and Twelfth Courts of Appeals each has only three members.  With respect to precedent, at least, there is essentially no

7

an applicable legislative or constitutional provision. In other contexts, regulatory enactments or executive-branch decisions may qualify.[9]

Courts widely follow this understanding of *stare decisis*. We identified several courts that have adopted practices designed to ensure their fidelity to *stare decisis* in *Brazos Electric Power Cooperative, Inc. v. TCEQ*, 576 S.W.3d 374, 383 n.6 (Tex. 2019). We favorably quoted a decision of the Fourteenth Court of Appeals, which formalized the requirement that one panel remains bound by a prior panel's holdings in *Chase Home Financial, L.L.C. v. Cal Western Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The Fifth Circuit refers to this principle as the "rule of orderliness." *See, e.g., Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or

difference between sitting en banc or as a panel. But *all* courts, regardless of the procedure used, should still make clear when they are repudiating their own case law. Doing so avoids any confusion about what the current law is; it also helps all courts remain cautious about exercising that authority too freely. A single panel of a multi-member court lacks the *power* to overrule a precedent— but even when a court has that power, it should exercise it with restraint and only under proper circumstances, which we address in Part III, below.

[9] *How* a judicial opinion may be "superseded" depends on context. This Court, for example, may reverse a lower court's interpretation of a statute, whereas the legislature might amend the statute. In the former instance, the lower court's interpretation is altogether invalid. In the latter, the interpretation *of the original text* remains valid; the legislature can *change* statutory text, but cannot revise the judiciary's construction of text. Thus, a judicial interpretation would be persuasive authority if the legislature uses that original text in a different context. Said differently, a legislative body does not "overrule" or "reverse" judicial decisions—but its actions can certainly have that practical effect by changing the law.

our *en banc* court."). Every federal appellate court respects these underlying legal principles.[10]

The requirement that we are formalizing today, therefore, is hardly novel. At bottom, it is nothing more than a manifestation of our commitment to precedent in the first place. If one appellate panel decides a case, and another panel of the same court differently resolves a materially indistinguishable question in contravention of a holding in the prior decision, the second panel has violated the foundational rule of *stare decisis*.[11] Affording *stare decisis* authority to the second case would be tantamount to eliminating *stare decisis* altogether, as nothing would stop a third panel from returning to the initial outcome, or going yet another way. For our legal system, the result would not be order and stability, but chaos and unpredictability. Every day would be a new day in the life of the law; every case would present an opportunity to refashion settled principles and a temptation both for parties and courts to disregard disliked precedent. The very concept of "settled principles"

---

[10] Kozel, *supra*, at 20–21 ("When a panel of three judges issues a decision on behalf of a federal court of appeals, . . . . [t]he decision is also binding on future three-judge panels of the court that issued it. It can be overruled only if the appellate judges agree to rehear the case en banc . . . ."); Joseph W. Mead, *Stare Decisis in the Inferior Courts of the United States*, 12 Nev. L.J. 787, 794–95 (2012) ("[E]ach circuit court has adopted some version of 'law of the circuit.'").

[11] Most such "violations" are presumably inadvertent, as when parties fail to identify binding precedents. Despite lawyers' and judges' best efforts, deviations of that sort are inevitable, especially in busy and large appellate courts. If last-in-time decisions trumped earlier decisions, the public writ large would unfairly bear the consequences of departures from *stare decisis*. But nothing is unfair about making a party bear the consequences of a result that would have been different had the court been aware of a binding precedent that the party did not invoke.

would eventually be eroded.

The Seventh Court reached the conclusion that it should follow the second line of cases, and not the first, for a very respectable reason: its prediction that a Third Court panel would have followed the more recent cases. We emphasize that the Seventh Court noted that its own precedent would have compelled the contrary result.

The Seventh Court sought to replicate the likely decision of a Third Court panel. As a general matter, that approach is exactly what Rule 41.3 requires. But Rule 41.3's text, and the core principle of *stare decisis* even *without* Rule 41.3's express admonition, directs an objective and not a subjective analysis. Transferee courts must follow whatever law binds the transferor court, even if there is reason to suspect that a transferor court might disregard that law. Because a Third Court panel would have been objectively bound to follow the earliest non-superseded line of cases, the Seventh Court was required to do so as well in a transferred appeal. The court of appeals erred by not following the requirements of *stare decisis*.

## III

We cannot resolve the case solely by concluding that the Seventh Court erred under Rule 41.3 and general principles of *stare decisis*. In this Court, unlike in the Seventh Court, this case also presents the substantive question of whether that error was harmless. The Seventh Court thought that the later Third Court cases were erroneous, but still applied them. If it turns out that those later cases were correct, then we would affirm the judgment below despite the Seventh Court's

10

methodological error.[12]

We conclude, however, that the earlier cases better reflect this Court's decisions that require courts of appeals to find appellate jurisdiction even in the face of minor and non-prejudicial technical or clerical defects. We acknowledge that *Philbrook v. Berry*, 683 S.W.2d 378 (Tex. 1985) (orig. proceeding), appears to point in the other direction. Although we could distinguish that case—yet again—we conclude that the sounder course is to apply the principles of *stare decisis* and overrule that decision.

## A

The argument against the Seventh Court's appellate jurisdiction is that the motion for new trial was ineffective because it was filed in the original cause (No. 16,735) rather than in the new cause (No. 17,366). If the motion was ineffective, it was ineffective *only* for that reason; other than the incorrect docket number, the motion contained everything that was required. Nonetheless, if the procedural defect in the filing prevents the motion from extending the trial court's plenary power or the appellate deadlines, then it is uncontested that the eventual

---

[12] We emphasize that transferee courts have no authority to deviate from the procedural requirements of Rule 41.3 even if they are convinced that this Court would disagree with the transferor court's precedent. A transferee court must follow the transferor court's jurisprudence just as it must follow a precedent of this Court. "It is not the function of a court of appeals to abrogate or modify established precedent." *Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002). Transferee courts instead may state that "the outcome would have been different" absent the duty to follow "the transferor court's precedent." Tex. R. App. P. 41.3. Respectful observations of that sort are salutary because they help identify inconsistencies in Texas law, which in turn assists this Court in determining whether resolving an issue is important to the jurisprudence of the State.

11

notice of appeal that Mitschke filed was untimely. And if the notice of appeal was untimely, then the appeal is jurisdictionally barred. In other words, appellate jurisdiction hinges on the effectiveness of the motion for new trial.

Respondents' chief authority for deeming that motion to be ineffective is *Philbrook v. Berry*, which we agree has many parallels to this case.[13] In *Philbrook*, a plaintiff obtained a default judgment against a defendant and then successfully severed that default judgment into a new cause with a final judgment. 683 S.W.2d at 379. When the defendant became aware of the default judgment, it filed a motion for new trial—but, as in this case, it filed that motion in the *original* rather than the *new* cause. *Id.* The trial court eventually granted the motion for new trial to set aside the default judgment, but it did so fifty-three days after the default judgment. *Id.* That would have been no problem if the motion for new trial had been effective, but this Court held that the filing defect in that motion was fatal: "[T]he motion for new trial must be filed in the same cause as the judgment the motion assails." *Id.* The motion, therefore, could not extend the trial court's plenary power beyond the thirty-day period following entry of the default judgment. *Id.* The default judgment had become final before the trial court signed the new-trial order, rendering that order invalid. *Id.*

Following *Philbrook*, this Court has confronted a series of cases,

---

[13] Respondents also point us to our holding in *In re K.A.F.*, 160 S.W.3d 923, 926–27 (Tex. 2005). But *K.A.F.* stands for a proposition that we reaffirm—that timeliness remains essential in *any* appeal. In ordinary appeals (like this one), *but not* in accelerated appeals (like *K.A.F.*), a motion for new trial affects that timeliness.

12

typically involving severance orders, in which the lower courts dismissed appeals as untimely. In each case, we have refused to find *Philbrook* controlling. We have repeatedly cast doubt on "whether *Philbrook* was correctly decided . . . ." *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 278 (Tex. 1994); *accord City of San Antonio v. Rodriguez*, 828 S.W.2d 417, 418 (Tex. 1992). We have said that *Philbrook* "is not to be given an expansive reading that invalidates bona fide attempts to appeal," *McRoberts v. Ryals*, 863 S.W.2d 450, 455 (Tex. 1993), and praised lower courts that "correctly . . . limited [*Philbrook*'s] holding to substantially the same facts," *id.* at 455 n.8. We continually distinguished *Philbrook*, despite each case having what appeared to be the characteristic that *Philbrook* described as fatal: the key filing was in the wrong cause.[14]

Respondents do not attack our decisions to restrict and distinguish *Philbrook*. They instead contend that this case is far closer to *Philbrook* than our other precedents, and that there is no basis to distinguish

---

[14] *See Blankenship v. Robins*, 878 S.W.2d 138, 138–39 (Tex. 1994) (motion for new trial was filed under wrong cause number because of conflicting information in the court's order and the abstract of judgment, but all parties and the court proceeded as if the motion was properly filed); *Tex. Instruments*, 877 S.W.2d at 278 (extension of time filed in wrong cause number due to court of appeals' clerical error); *Mueller v. Saravia*, 826 S.W.2d 608, 609 (Tex. 1992) (motion for new trial filed under original rather than severed cause number, but all parties' motions and filings were made under the original number and the judgment assailed was under the original cause number); *Ryals*, 863 S.W.2d at 451, 454–55 (notice of appeal filed in original rather than severed cause when clerk had delayed alerting the parties to the severed cause's number); *Rodriguez*, 828 S.W.2d at 417–18 (after a motion to modify or correct the judgment and the notice of appeal both had the correct style but wrong cause number, the district clerk substituted the correct cause number and notified the parties that they did not need to file a new motion).

13

*Philbrook* here even though we did so there. Respondents' arguments have considerable persuasive force. Yet while this case may present a closer call than some of our past cases, the difference is one of degree and not of kind. We are confident that we *could* again distinguish *Philbrook*, particularly given our admonitions to confine that case to its precise context.

On the other hand, we recognize that ever finer distinctions at some point undermine respect for precedent more than they advance it. Distinguishing *Philbrook* yet again, while purporting to leave it intact, may reasonably convey a sense that we are sporting with that case rather than honoring it. *Philbrook* is a precedent of this Court and warrants respect. That does not mean that it must survive scrutiny under our current law. If it should not survive, however, we should give it a decent and honorable burial, and not treat it with nominal deference even as we whittle it away.

Accordingly, we turn back to the law of *stare decisis*. Our discussion above concerned when appellate courts even have the *power* to overturn or disregard precedents. This Court always has that power for our own cases. Rather, the question is when a court with that power *should* exercise it.

## B

"*Stare decisis* is not an inexorable command," *Payne v. Tennessee*, 501 U.S. 808, 828 (1991), but it is far more than a mere presumption. After all, the doctrine exists to protect wrongly decided cases. We hardly need *stare decisis* to adhere to precedents that we regard as correct; we would do that anyway. Rather, one key advantage of *stare decisis*, for

14

the public and the courts, is that settled law generally may be taken as a given without continually subjecting each precedent to renewed scrutiny. That benefit would disappear if *stare decisis* only protected *correctly decided* cases, because every time a precedent arose, we would labor from scratch to decide whether it was correct. "The whole function of the doctrine is to make us say that what is false under proper analysis must nonetheless be held to be true, all in the interest of stability." Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 139 (1997). "Respecting *stare decisis* means sticking to some wrong decisions." *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455 (2015).

For a case to be a candidate for overruling, it is therefore necessary, but not nearly sufficient, for that case to be wrong. We therefore first examine whether *Philbrook* is indeed wrong, and then, if it is, consider whether *stare decisis* nonetheless saves it. This case turns on *Philbrook* one way or another; if the misfiled motion for new trial here caused the notice of appeal to be untimely, it was only because of authority that traces to *Philbrook*.

Texas law greatly favors resolving litigation on the merits rather than on procedural technicalities. But the lack of a timely notice of appeal is the most fundamental procedural error that *can* lead to a total loss—and that is because the absence of a timely notice of appeal prevents the appellate court from ever exercising jurisdiction in the first place. *See, e.g.*, *In re K.A.F.*, 160 S.W.3d 923, 927 (Tex. 2005). Without jurisdiction, the court of appeals is powerless to entertain an appeal, no matter how grave the error.

*Philbrook* was decided in an era full of "[s]nares and [t]raps" that

15

could doom an appeal. Jack Pope & Steve McConnico, *Practicing Law with the 1981 Texas Rules*, 32 Baylor L. Rev. 457, 492 (1980).[15] "Texas appellate practice ha[d] been mired in the nineteenth century's *in terrorem* philosophy, which has often caused harsh dispositions without regard to the merits of the cause." *Id.* (collecting cases to detail various jurisdictional pitfalls). The landscape was already changing, however. For example, "[t]he 1981 revisions of the appellate rules remove[d] many life-or-death links in the appellate time chain." *Id.* at 493.[16]

Many of these changes related to the circumstances surrounding bringing appeals. Under our current rules, *just filing a notice of appeal—* even if too early, or even in the appellate court (instead of the trial court, where it is supposed to be filed)—suffices to bring the appeal within the appellate court's jurisdiction. Tex. R. App. P. 25.1(a), (b). By no means should parties or counsel disregard the rules, but failure to comply with elaborate (or even not-so-elaborate) formalities need not cause inevitable dismissal: "In cases challenging the validity of a notice of appeal, 'this Court has consistently held that a timely filed document, even if defective, invokes the court of appeals' jurisdiction.'" *In re J.M.*, 396 S.W.3d 528, 530 (Tex. 2013) (quoting *Sweed v. Nye,* 323 S.W.3d 873, 875 (Tex. 2010)).

---

[15] For example, in *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex. 1977), this Court held that a request for and complaint about late findings of fact and conclusions of law could not extend appellate deadlines because they were filed with the clerk and not the judge himself. We overruled that decision in *Cherne Industries, Inc. v. Magallanes*, 763 S.W.2d 768, 770–72 (Tex. 1989).

[16] *See, e.g.*, *B. D. Click Co. v. Safari Drilling Corp.*, 638 S.W.2d 860, 861 (Tex. 1982) ("The laudable goal of these revisions was to eliminate, *insofar as practical*, the jurisdictional requirements which sometimes resulted in disposition of appeals without consideration of the merits.") (emphasis original).

Being *timely*, though, is no mere technicality; it remains essential. *In re K.A.F.*, 160 S.W.3d at 927. The timing requirements are laid out in Texas Rule of Appellate Procedure 26.1, which authorizes an extension—even a *retroactive* one—under narrow circumstances. *See* Tex. R. App. P. 26.3. When those periods have run, however, the appeal is over—in truth, it never began. That outcome is legitimate. Parties and courts are entitled to a degree of certainty about whether a judgment is in fact final.[17]

But conflating non-prejudicial, minor errors of form with altogether failing to file a document is *not* legitimate. Since *Philbrook* was decided, we have repeatedly reversed courts of appeals for deploying unduly technical readings of the rules to block merits consideration of an appeal. "[W]e have instructed the courts of appeals to construe the [rules] reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule." *Verburgt v. Dorner*, 959 S.W.2d 615, 616–17 (Tex. 1997); *accord In re R.D.*, 304 S.W.3d 368, 370 (Tex. 2010) (quoting *Verburgt* in a case

---

[17] Notices of appeal are especially important, but other rules must be followed as well, and failing to do so may engender serious consequences. For example, it is true that "briefs are to be liberally, but reasonably, construed so that the right to appeal is not lost by waiver." *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019). But a complete failure to preserve an issue may leave a court no choice but deem it waived: "A brief must provide citations or argument and analysis for the contentions and failure to do this can result in waiver." *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018). If such an issue was central to the case, the result may be comparable to the failure to have perfected an appeal.

involving the rules of civil procedure).[18] In this context, being "reasonable" *leads* to being "liberal": "It seems to me, moreover, that we should seek to interpret the rules neither liberally nor stingily, but only, as best we can, according to their apparent intent. Where that intent is to provide leeway, a permissive construction is the right one." *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 319 (1988) (Scalia, J., concurring).

This approach was taking form to some degree even before *Philbrook*, casting even further doubt on that precedent.[19] But, in fairness, it was only in the years after *Philbrook* that our insistence on reading the rules in this way became dominant and systematic, so that we now can affirm that "[t]his Court has consistently treated minor procedural mishaps with leniency, preserving the right to appeal." *Ryland Enters., Inc. v. Weatherspoon*, 355 S.W.3d 664, 665 (Tex. 2011).

In this case, however, we do not need a particularly "liberal," "permissive," or "lenient" construction to confirm that a motion for new

---

[18] *See also, e.g., Higgins v. Randall Cnty. Sheriff's Off.*, 257 S.W.3d 684, 688–89 (Tex. 2008) (permitting leniency when application for indigency filing failed to comply with the rules); *Hone v. Hanafin*, 104 S.W.3d 884, 887–88 (Tex. 2003) (allowing appellate-deadline extension when litigant did not adequately explain the reason for an untimely notice of appeal); *Gomez v. Tex. Dep't of Crim. Just., Inst'l Div.*, 896 S.W.2d 176, 176–77 (Tex. 1995) (allowing appellate-deadline extension with a post-judgment motion not mentioned in Rule 26.1); *Grand Prairie Indep. Sch. Dist. v. S. Parts Imports, Inc.*, 813 S.W.2d 499, 500 (Tex. 1991) ("[A] court of appeals may not dismiss an appeal when the appellant filed the wrong instrument required to perfect the appeal without giving the appellant an opportunity to correct the error."). This list is, of course, incomplete.

[19] *See, e.g., Smirl v. Globe Labs.*, 188 S.W.2d 676, 678 (Tex. 1945) ("The object of the new rules is 'to obtain a just, fair, equitable and impartial adjudication of the rights of litigants', Rule 1, and where this can be done without doing violence to the rules or injustice to the rights of the parties, it is the duty of the court to do so.").

trial with an error like Mitschke's was timely filed (and that, derivatively, so was his notice of appeal). Our rules only require a motion for new trial to be (1) written, (2) signed, and (3) filed within thirty days of the judgment. Tex. R. Civ. P. 320, 329b. Here, the judgment was originally an interlocutory summary judgment (filed under the original cause number) because it disposed of the claims as to two of several parties—Borromeo and Blackjack Ranch. That interlocutory order only became a final judgment upon those parties' motion (also filed under the original cause number, of course) to sever from the original cause. *See Park Place Hosp.*, 909 S.W.2d at 510. The severance order was granted (and it too was filed under the original cause number). Twenty days after that, within Rule 329b's thirty-day deadline, Mitschke filed a motion for new trial—under the original cause number. Mitschke also complied with Rule 320 because the motion was "in writing" and "signed by [Mitschke's] attorney."

The motion unnecessarily listed all the original parties.[20] But it expressly described the severance order and made clear that it was the summary-judgment order—now final with the severance—that the motion was attacking. It was served on counsel for respondents. Nothing suggests that the misfiling was done from trickery or to mislead anyone, and respondents have presented no argument about how Mitschke's filing the motion in the original docket number could have prejudiced them.

---

[20] Borromeo and Blackjack Ranch point to this overabundance as evidence that the mistake was more an error of judgment than a clerical error. We see no material difference, particularly without any showing of bad faith or prejudice.

It seems implausible that prejudice was even possible under these facts.[21] We have no difficulty in concluding that the motion met the rules' spare requirements, which extended the trial court's plenary power and the appellate deadlines. Tex. R. Civ. P. 329b.

To the extent that *Philbrook* can be read to create the foundation for a lack of appellate jurisdiction in a case like this one—with a timely and compliant motion for new trial that suffers only from a docket-number error in the context of severance that caused no prejudice to any party—we readily conclude that *Philbrook* is inconsistent with our jurisprudence. If the question presented in *Philbrook* arose for the first time today, we would decide that case differently, and for that reason we deem *Philbrook* to be wrong.

# C

*Philbrook* may be wrong, but that is not enough to jettison it. Adherence to precedent remains the touchstone of a neutral legal system that provides stability and reliability. Departures from precedent must be carefully considered and should be rare. When we contemplate overruling a precedent, we must consider whether doing so serves—or instead undermines—the underlying purposes of *stare decisis*. *See, e.g.*,

---

[21] Borromeo and Blackjack Ranch had notice of what was happening. Mitschke's motion identified the summary-judgment order and the severance order that made it final. There was no final judgment to assail in the original cause, so there was no confusion regarding which order he was assailing. *See Gomez*, 896 S.W.2d at 176–77 (any motion that "assail[s] the trial court's judgment" extends the appellate timetable). Borromeo and Blackjack Ranch have not disputed Mitschke's certification that they were served. Nor have they identified any other prejudice, aside from their understandable desire to win by default. Prejudice, however, requires a distinct showing of harm, which respondents do not assert.

*Payne*, 501 U.S. at 827–28; *Sw. Bell Tel. Co., L.P. v. Mitchell*, 276 S.W.3d 443, 447 (Tex. 2008). In *Weiner v. Wasson*, 900 S.W.2d 316, 320 (Tex. 1995), we explained that "we adhere to our precedents for reasons of efficiency, fairness, and legitimacy." We reiterated that rationale in other cases. *E.g.*, *Mitchell*, 275 S.W.3d at 447; *Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000).

These general categories overlap to some extent, but each focuses on distinct features relevant to whether a court should overrule its own precedent.[22]

**1**

"Efficiency" reflects the central role of precedent—to provide clear and settled law. We cannot agree that retaining *Philbrook* in an ever-diminishing form provides efficiency. Indeed, the "courts of appeals in Texas have demonstrated confusion about the continued viability of *Philbrook*," as Justice Field accurately observed in *Levin*, one of the Third Court decisions at issue in this case. 2015 WL 690368 at *3 (Field, J., concurring) (collecting cases). Justice Field concluded by explaining that he "wr[o]te separately to ask the supreme court to clarify its position on the ongoing viability of *Philbrook*," *id.* at *4—which we may have done had a party brought a petition in that case to this Court.

A precedent that becomes less useful over time and continues to generate confusion among parties and the judiciary cannot be regarded as "efficient." The opposite is true. Especially for procedural or remedial

---

[22] A court of appeals sitting en banc does not need to accord deference to a panel opinion. If the en banc court is considering the validity of an en banc precedent, however, it should exercise the same caution that this Court exercises before overruling one of its own precedents, as today's opinion reflects.

issues that should be clear, the continuing need to expend judicial resources affirmatively indicates *in*efficiency. *See Moragne v. State Marine Lines, Inc.*, 398 U.S. 375, 404 (1970) (decrying a past precedent for "produc[ing] litigation-spawning confusion in an area that should be easily susceptible of more workable solutions"). New precedents, of course, often require follow-on cases to refine their contours. But the passage of time should make a precedent less susceptible to confusion, not more. Efficiency considerations favor overruling *Philbrook*. Distinguishing it once again would only deepen the existing confusion.

Overruling a precedent *also* contributes to instability and confusion, however, particularly if it is perceived as part of a pattern of disrespect for precedent. But preserving *Philbrook* without distinguishing it would exacerbate, not mitigate, any confusion. Applying *Philbrook* as respondents urge might be faithful to *Philbrook*—but it would inject massive cognitive dissonance into the past three decades of consistent procedural law. *At best*, *Philbrook* "stands as an outlier in our [procedural] jurisprudence, particularly when compared to more recent decisions." *Franchise Tax Bd. v. Hyatt*, 139 S. Ct. 1485, 1499 (2019) (denying *stare decisis* effect for a federal sovereign-immunity precedent that, like *Philbrook*, was an outlier). Worse than that, *Philbrook* relies on principles that are irreconcilable with current law that we have repeatedly affirmed and extended. *Philbrook*'s foundational premise—that the misfiled motion for new trial was ineffective—is therefore worse than being "merely" wrong.

Overruling *Philbrook* advances efficiency. Further distinguishing that case would undermine efficiency, and fully applying it would wreak

havoc. *Philbrook* "has had a long opportunity to prove its acceptability, and instead has suffered universal criticism and wide repudiation. To supplant the present disarray in this area with a rule both simpler and more just will further, not impede, efficiency in adjudication." *Moragne*, 398 U.S. at 404–05.

## 2

"Fairness" in the context of *stare decisis* does not concern whether any individual outcome is just. Instead, it reflects whether overruling a precedent would be unfair to the public or the government that relies on the precedent's stability. The greater the settled and reasonable reliance interests that flow from a precedent, the greater our reluctance to overrule it. *Payne*, 501 U.S. at 827–28. Our reluctance is particularly acute in property and contract cases—indeed, anywhere "parties are especially likely to rely on such precedents when ordering their affairs." *Kimble*, 576 U.S. at 457.

But "the opposite is true in cases such as the present one involving procedural and evidentiary rules." *Payne*, 501 U.S. at 828.[23] It is fanciful to imagine arranging one's affairs in "reliance" on the remote possibility that, should litigation ever arise, one's opponent may make a fatal procedural error. True, we must dismiss an appeal that was not preceded by a timely notice of appeal—but not because the non-

---

[23] *Payne*, a criminal-procedure case, concerned whether victim-impact statements could be used in sentencing. To put it mildly, one is unlikely to rely on the inadmissibility of victim-impact statements when choosing to murder someone. Likewise, the rule governing extensions of a trial court's plenary power and appellate deadlines is unlikely to affect any primary conduct. Both are procedural issues where reliance interests are negligible in comparison with, for example, property or contract rights.

appealing party had relied on that rule when entering into a contract, purchasing real property, deciding whether to commit a tort, or undertaking any other primary conduct. Such a party is merely the adventitious beneficiary of a larger purpose: our need to uphold clear rules, some of which are jurisdictional and require finality.

To facilitate the "efficient and uniform administration of justice," the Constitution authorizes this Court to craft procedural and evidentiary rules. Tex. Const. art. V, § 31. We frequently modify those rules, which reflects a continuing focus on the system as a whole. By contrast, overruling precedents that govern private contractual or property rights (among others) might unsettle the expectations that underlie long-term investments or decisions.

Likewise, we have long held that "in the area of statutory construction, the doctrine of *stare decisis* has its greatest force," *Mitchell*, 276 S.W.3d at 447 (quoting *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 186 (Tex. 1968)). Even there, circumstances may require the correction of seriously mistaken and harmful precedents.[24] We are especially alert to the need for stability in this context, however, even where private reliance interests might be absent. After all, the legislature itself is entitled to rely on our settled construction of its enactments and to modify any statute if a different result is desirable. *Id.* at 447–48. Vacillating constructions of an unchanged statutory text,

---

[24] Both this Court and the U.S. Supreme Court are particularly cautious about overruling statutory constructions, but circumstances have led both courts to do so. *See, e.g.*, *Hohn v. United States*, 524 U.S. 236, 253 (1998) (overruling a prior construction of 28 U.S.C. § 1254(1)); *Tooke v. City of Mexia*, 197 S.W.3d 325, 342 (Tex. 2006) (overruling a prior reading of the Local Government Code).

24

absent truly compelling justifications, would unfairly create a moving target, which would undermine the legislature's task of making the public policy of the State. But no statute has codified *Philbrook*'s principle, and so we can perceive neither private *nor* public reliance on its retention.

Finally, we have applied (rather than distinguished) *Philbrook* only twice, and for a proposition coextensive with Rule 329b: that a trial court loses its plenary power thirty days after the judgment, or after seventy-five additional days if a timely motion for new trial was filed.[25] *Philbrook* need not remain on the books for that elementary proposition to remain true. The rule itself is enough. Even if it were not, more recent and more clearly reasoned cases, which lack *Philbrook*'s baggage, better support that proposition. *See, e.g.*, *In re Elizondo*, 544 S.W.3d 824, 829 (Tex. 2018) (orig. proceeding). There is no unfairness in overruling *Philbrook*.

### 3

"Legitimacy" concerns focus on the judiciary's appropriate role within the government. We have no authority to decide cases based on political or policy factors that are entirely appropriate for the other branches of government. Our judgments, which become precedents, should be based on reason, law, and not political whim; new decisions should therefore comport with precedents. One important value of *stare decisis* is that it justifiably "permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals . . . ." *Vasquez v. Hillery*, 474 U.S. 254, 265 (1986). Respecting

---

[25] *In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 829 (Tex. 2005); *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 310 (Tex. 2000).

precedent conveys to the public that the courts are neutral and disciplined.

On the other hand, adhering to or entrenching a precedent that is egregiously wrong or that has lost its underpinnings does not foster legitimacy. "*Stare decisis* does not warrant an obstinate insistence on precedent that appears to be plainly incorrect," particularly when the other *stare decisis* concerns point against retaining the precedent. *Mitchell*, 276 S.W.3d at 448. A case that is always distinguished but never followed is more likely to generate cynicism than legitimacy.

It therefore sometimes advances legitimacy to overrule rather than to sustain a precedent. Such a determination always requires careful and respectful analysis, including genuine openness to retaining the challenged precedent.[26] Here, that analysis points in only one direction. *Philbrook* can coexist uneasily, if at all, with our more recent and better reasoned cases. The costliest step in terms of legitimacy would be to uphold *Philbrook*, not overrule it.

\* \* \*

We have long retained *Philbrook* despite misgivings almost from the beginning. We now conclude that continuing to do so serves none of the values of *stare decisis*. *Philbrook v. Berry* is overruled.

## D

We turn, finally, to the application of these principles to this case. Mitschke's motion for new trial, even if misfiled, clearly identified the

---

[26] *See, e.g.*, *Artis v. District of Columbia*, 138 S. Ct. 594, 608 (2018) (Gorsuch, J., dissenting) ("Chesterton reminds us not to clear away a fence just because we cannot see its point. Even if a fence doesn't seem to have a reason, sometimes all that means is we need to look more carefully . . . .").

judgment it assailed.  Refusing to find appellate jurisdiction here is inconsonant with our cases—except *Philbrook*.  With that case overruled, we now hold that when a party timely attacks an order that grants a final judgment and then files a notice of appeal that is otherwise timely, the court of appeals must deem the appeal to have been timely perfected despite a non-prejudicial procedural defect.[27]  Mitschke's motion for new trial effectively extended the trial court's plenary power under Rule 329b and, correspondingly, the appellate timelines under Rule 26.1(a).  Mitschke's appeal therefore was timely, and the Seventh Court may now resolve the merits.

## IV

In *Eberhart v. United States*, 546 U.S. 12 (2005) (per curiam), the U.S. Supreme Court considered a similar question of appellate jurisdiction based on procedural requirements that, under that Court's precedent, seemed to be jurisdictional.  The lower court in that case, as it happens, was the Seventh Circuit; our case comes from the Seventh Court.  In *Eberhart*, the Seventh Circuit followed what it took to be settled law despite misgivings in light of later Supreme Court cases.  Both the Seventh Circuit there and the Seventh Court here easily could have sublimated the procedural issue and evaded review, but neither did. The Supreme Court expressed its appreciation for how the Seventh Circuit proceeded, and we now borrow its language for the same

---

[27] We reserve for any future case, if necessary, whether a misfiling that *is* objectively prejudicial would require a different outcome.  In any event, Texas courts will properly regard with great disfavor any indication that a party made any filing under the wrong docket number with the *purpose* of causing litigation harm to the other side.  No such indication exists here.

27

purpose:

> We finally add a word about the approach taken by the [Seventh Court]. Although we find its disposition to have been in error, we fully appreciate that it is an error . . . caused in large part by [*Philbrook* and the Third Court cases that relied on it]. . . . Convinced, therefore, that [the later Third Court cases] governed this case, the Seventh [Court] felt bound to apply them, even though it expressed grave doubts in light of [later jurisprudential developments]. This was a prudent course. It neither forced the issue by upsetting what the Court of Appeals took to be [the Third Court's] settled precedents, nor buried the issue by proceeding in a summary fashion. By adhering to its understanding of precedent, yet plainly expressing its doubts, it facilitated our review.

*Id.* at 19–20.

\* \* \*

We reverse the judgment below and remand for the court of appeals to address the merits, on which we express no opinion.[28]

Evan A. Young
Justice

**OPINION DELIVERED:** May 13, 2022

---

[28]As Mitschke requests, we dismiss his petition in No. 21-0331—which arose from the appeal in the original cause and did not challenge a final judgment—for lack of jurisdiction.